**Peyton R. WADDELL,**
**Appellee/Cross-Appellant**

v.

**SMALL TUBE PRODUCTS, INC.,**
**Appellant/Cross-Appellee**

Nos. 85–3519, 85–3550.

United States Court of Appeals,
Third Circuit.

Argued April 29, 1986.

Decided Aug. 25, 1986.

David B. Mulvihill (argued), Louis J. Krzemien, Jr., Mansmann Cindrich & Huber, Pittsburgh, Pa., for Peyton R. Waddell, appellee/cross-appellant.

Roberta Sabin Recker, Gayle L. Skolnick (argued), Baker & Daniels, Indianapolis, Ind., Martin J. Saunders, Thorp, Reed & Armstrong, Pittsburgh, Pa., for Small Tube Products, Inc., appellant/cross-appellee.

Before SLOVITER, STAPLETON, Circuit Judges, and LONGOBARDI, District Judge.*

* Hon. Joseph J. Longobardi, United States District Court for the District of Delaware, sitting by designation.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

At the conclusion of a full trial, the district court found that Small Tube Products, Inc. violated Title VII of the Civil Rights Act of 1964 by refusing to rehire its former employee Peyton Waddell in retaliation for Waddell's filing a charge of religious discrimination against Small Tube. Small Tube appeals contending that the district court's finding is clearly erroneous and that the court erred in failing to find Waddell's claim barred by laches. Waddell cross-appeals contending that the court erred in fixing the amount of the backpay award.

## I.

### Factual Background

On August 8, 1973, Waddell, who had worked for Small Tube for ten years, was discharged from his position as a bright anneal furnace operator for insubordination when he left his machine for a twenty-five minute lunch break at noon after being told not to do so. The only other incidents in Waddell's record were one or two warnings nine years before for leaving work without notifying anyone. Waddell, who is a Baptist, believed that he was terminated because of his devout religious beliefs and filed complaints with the Equal Employment Opportunity Commission (EEOC) in March, 1975, and with the Pennsylvania Human Relations Commission (PHRC) in December, 1975.

In the summer of 1976, Waddell heard that there were openings at Small Tube and that former employees were rehired. Waddell telephoned Clyde Flaugh, the former Plant Superintendent, who told him to complete an application. Waddell submitted an application to Small Tube on Thursday, August 12, 1976, was interviewed by Flaugh and Howard Rife, the present Plant Superintendent, was scheduled for a physical examination which he passed, and on August 12 or August 13, was told to report for work at 7:00 a.m. on Monday, August 16, 1976.

On Friday, August 13, 1976, Small Tube received a notice from the PHRC that Waddell's discrimination charge, which had been pending, was dismissed. On Saturday, August 14, 1976, Rife telephoned and told Waddell not to report for work. The parties have stipulated that Edward Oliphant, then President of Small Tube, made the ultimate decision not to rehire Waddell. Oliphant died in June, 1980.

On August 24, 1976, Waddell sent a letter to the PHRC requesting reconsideration of its dismissal of his complaint. In the same letter, he included a charge arising out of the failure to rehire. On October 27, 1976, the PHRC denied Waddell's petition for reconsideration, but in late January, 1977 the PHRC prepared a formal complaint based on the failure to rehire charge which was signed by Waddell on February 12, 1977.[1]

In accordance with a Worksharing Agreement between the PHRC and the EEOC, the complaint was then referred on March 21, 1977 to the EEOC for filing. The EEOC stated it would assert jurisdiction on the 60th day after the charge was filed with the PHRC, but would not engage in any compliance activities until the PHRC had completed its investigation. The PHRC then dismissed the complaint on the ground that the identical issues had been disposed of when it denied Waddell's petition for reconsideration. Inexplicably, the PHRC letter of April 29, 1977 notifying Waddell of the dismissal of his case incorrectly stated that the ground for the dismissal was the existence of "insufficient facts to show that discrimination had occurred on the basis that [Waddell's] *handicap/disability* was job-related." App. at 128 (emphasis added). Nonetheless, Waddell does not contend that he misunderstood this dismissal notice.

The PHRC failed to notify the EEOC when it dismissed Waddell's charge, as it

---

1. The district court rejected Small Tube's contention that the complaint was not filed within 90 days of the alleged act of discrimination in August, 1976, and that issue is not before us.

was obliged to do under the Worksharing Agreement. In fact, the PHRC did not send the EEOC any such notification until November 30, 1981, more than 4½ years later. In the meantime, Waddell wrote two letters to the EEOC about his case.

The first letter dated April 17, 1977 informed the EEOC that Small Tube continued to "blackball" him with prospective employers. The letter ended with the sentences "I have a family, wife, and 4 children to support. [F]or four years everytime I get a good lead on a job this happens. [T]he mental anguish on my family trying to clothe and feed them is almost unbearable. Thank you. Please keep me informed." App. at 63–64. There was no response.

The second letter dated September 30, 1977, stated in full:

> In regard to my case, Peyton R. Waddell vs. Small Tube Products, you promised to pick this case up when Human Relations let it go. [I] would like to know what you're going to do concerning this case. [I] would appreciate hearing from you immediately.

App. at 65. The letter further identified the case by charge number. When the EEOC failed to respond, Waddell did nothing further until the EEOC contacted him in 1982. During that 4½ year period, the EEOC conducted three internal audits that revealed the existence of the outstanding charge, but each time it assumed that PHRC was still proceeding with the case.

When the EEOC finally was notified of the PHRC's closing of the case, it conducted an investigation and determined that there was no reasonable basis to believe Waddell had been subject to religious discrimination but that there was reasonable cause to believe he had not been rehired in retaliation for the charges he brought against Small Tube. In May, 1983, Waddell was first notified of his right to request a right to sue letter and he was sent a notice of right to sue on approximately June 24, 1983. On August 22, 1983, within 90 days of receiving notice of his right to sue, Waddell brought this action claiming that Small Tube had violated Section 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a).

Before trial, Small Tube filed a motion for summary judgment contending, *inter alia,* that laches barred Waddell's action. In the first of three opinions issued in this case, the district court denied the motion.

This case then proceeded to a bench trial. On March 1, 1985, the district court issued its second opinion holding that Waddell had shown that Small Tube had retaliated against him for bringing a religious discrimination charge in violation of Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a). The district court ordered Small Tube to reinstate Waddell to the position for which he had applied in August, 1976.

The district court then held a proceeding on the issue of damages. In its third opinion, the district court relied on 42 U.S.C. § 2000e–5(g) to award backpay to Waddell, including lost wages, the value of certain fringe benefits, and prejudgment interest. However, the court barred Waddell from recovering backpay for the 4½ years that he took no action, relying on the doctrine of laches.

We will consider first Small Tube's challenge to the district court's judgment on the merits, then its contention that the court erred in failing to find laches, and finally, Waddell's cross-appeal, challenging the district court's reduction of his backpay award.

## II.

### *The Finding of Retaliation*

■ Section 704(a) of the Civil Rights Act of 1964 provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any man-

ner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). The district court found that Waddell proved by a preponderance of the credible evidence that Small Tube did not rehire him in retaliation for his having brought a religious discrimination charge. The court found that Small Tube's retaliatory motive was evidenced by the timing of its refusal to rehire Waddell, since it had directed him not to report to work after it learned that Waddell's discrimination charge had been dismissed by the PHRC.

The standards governing the order and allocation of proof in a Title VII case were set forth by the Supreme Court in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 250–59, 101 S.Ct. 1089, 1092–97, 67 L.Ed.2d 207 (1981). and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06, 93 S.Ct. 1817, 1823–26, 36 L.Ed.2d 668 (1973). These standards apply in cases alleging retaliation for participation in Title VII processes. *See Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir.1980), *cert. denied*, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981); *Aguirre v. Chula Vista Sanitary Service and Sani-Tainer, Inc.*, 542 F.2d 779, 781 (9th Cir.1976).

Small Tube's contention that Waddell did not establish his prima facie case because he did not properly show causation is not persuasive. The evidence of whether Waddell was rehired was conflicting, but the district court credited Waddell's testimony. It accepted Waddell's evidence

that Small Tube received Waddell's application for reemployment on August 12, rehired Waddell on August 12 or 13, received notice of the [PHRC] dismissal of Waddell's discrimination charge on August 13 and told Waddell not to report to work on August 14.

App. at 603. The district court inferred retaliatory motives from these facts.

Small Tube argues that the finding of causation was "illogical" because it claims there was no evidence that Oliphant knew of the PHRC dismissal and because an EEOC charge was still pending. However, the receipt of that information on August 13 is circumstantial evidence that Oliphant knew of it at that time, both because he was president of the company and because the information directly related to an individual, Waddell, whose employment decision Oliphant was supervising. Moreover, Small Tube provided inconsistent explanations for its refusal to rehire Waddell. At trial, Rife testified that he had interviewed Waddell at Oliphant's express instruction but that he recommended to Oliphant against rehiring because he concluded from the interview that Waddell still had a negative attitude and because four Small Tube employees were against rehiring Waddell. This was directly contrary to Oliphant's explanation in an inter-office memorandum dated September 13, 1976 where Oliphant stated that Waddell had been considered for rehiring by mistake, as the new foreman did not know of Waddell's history. Oliphant further stated that he terminated the firm's reconsideration of Waddell as soon as he discovered it, because rehiring a former employee discharged for insubordination "set a poor precedent." App. at 219. The district court noted the inconsistency in Small Tube's explanations of its refusal to rehire and could appropriately have taken that into account.

The fact that the EEOC charge was still pending is not enough to disprove the inference drawn by the district court from the evidence, particularly since there was no evidence that Oliphant realized that the EEOC charge remained pending after the PHRC charge was dismissed. The district court's finding that Waddell made out a prima facie case of retaliation was a permissible one based on the evidence before it.

■ After Waddell presented his prima facie case, Small Tube sought to articulate a legitimate reason for its failure to rehire Waddell, which it claimed was based on his past misconduct. Waddell, in turn, then attempted to show that this reason was a pretext because Small Tube had rehired two other employees who had also engaged

in misconduct but who had not filed discrimination charges.

Small Tube claimed that the two rehired employees were not similarly situated to Waddell but the district court found otherwise. Ivan Strayer was an hourly production employee like Waddell. Although his employment was terminated for not reporting to work for three days without notifying the company, which Small Tube contends differs materially from insubordination, the district court noted that Strayer's conduct "was far from exemplary." App. at 604. Strayer refused to wear safety goggles, and told his supervisor, "go f— yourself." App. at 242. Later, Strayer threw a cherry bomb or firecracker at the supervisor, which landed about three feet from him and caused an object to strike him in the eye.

The other rehired employee, William Suckling, held a management position from which he was discharged for "unsatisfactory supervisory practices" because he allowed two employees to work on their own automobiles at the plant on company time. Suckling had previously admitted walking off with some small things from the plant.

Small Tube argues vigorously that the immediate reasons for the discharges in these cases were not serious offenses, as was Waddell's. However, the issue is not whether we would have found that these employees were similarly placed to Waddell, but whether the district court's findings that they were clearly erroneous. We cannot conclude on this record that its findings were "devoid of minimum evidentiary support". See Rochez Brothers, Inc. v. Rhoades, 527 F.2d 880, 887 (3d Cir.1975). Summarizing, it was not clearly erroneous for the district court to have concluded that Small Tube's proffered reason for the failure to rehire was pretextual and that Waddell had been dismissed in retaliation for having brought a discrimination charge.

### III.

### *Laches*

■ Small Tube's principal argument on appeal is that the district court erred in refusing to enter judgment for Small Tube on the ground of laches.[2] Waddell concedes that Title VII actions are subject to the equitable defense of laches when plaintiff has not fulfilled his or her minimum responsibilities in pursuing a claim, *see, e.g. Jeffries v. Chicago Transit Authority,* 770 F.2d 676, 679–80 (7th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986); *Boone v. Mechanical Specialties Co.,* 609 F.2d 956, 958–60 (9th Cir.1979); *McLemore v. Interstate Motor Freight,* 33 Fair Empl. Prac. Cas. 1384, 1386–87 (N.D.Ala.1984), but he argues that in this case Small Tube did not establish an inexcusable lack of diligence on Waddell's part.

The parties agree that the elements of laches are " '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.' " *EEOC v. Great Atlantic & Pacific Tea Co.,* 735 F.2d 69, 80 (3d Cir. 1984) (quoting *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961)) (hereafter "*Great A & P*"). The party asserting the defense, here Small Tube, bears the burden of proof. *See Great A & P,* 735 F.2d at 80.

Small Tube contends laches applies here as a matter of law because in the four and a half years following Waddell's second letter to the EEOC on September 30, 1977,

2. Small Tube first raised the issue in a motion for summary judgment. To be entitled to summary judgment on the ground of laches the movant's affidavit must establish a prima facie case of laches. *EEOC v. Great Atlantic & Pacific Tea Co.,* 735 F.2d 69, 81 (3d Cir.1984). Laches is rarely subject to summary judgment, *see Jeffries v. Chicago Transit Authority,* 770 F.2d 676, 679 (7th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1273, 89 L.Ed.2d 591 (1986), and can rarely be resolved without some preliminary evidentiary inquiry. *Sandvik v. Alaska Packers Ass'n,* 609 F.2d 969, 974 (9th Cir.1979). Apparently, at the close of the evidence on liability, Small Tube again requested the district court to enter judgment for it on the ground of laches, which the court denied. *See* Brief of Appellant/Cross-Appellee Small Tube at 2, Brief of Appellee/Cross-Appellant Waddell at 29.

Waddell made no further inquiry of the EEOC and failed to ask it for a right to sue letter or request it to take some action. It relies on Waddell's deposition testimony, where he stated:

I didn't [communicate with the EEOC] because their response was slow ... and it didn't seem to me like they was doing so much so I just more or less shelved it, ... In other words, I—this didn't really look like it was getting any place is what I am trying to say.

App. at 70. Small Tube further contends that it showed the requisite prejudice in its summary judgment motion because Oliphant, the witness whose motive was the issue in the case, had died in the interim; Clyde F. Flaugh, one of the other two witnesses, could not recall many facts about the relevant events; and Rife, the other witness, was no longer employed by Small Tube, and was beyond subpoena power.

In its opinion denying Small Tube's motion for summary judgment, the district court did not make an explicit holding on whether Small Tube had proven the element of prejudice. The court remarked that Small Tube had not shown that Rife's testimony would be insufficient or that it did not possess documentary evidence demonstrating that Waddell was not rehired for permissible reasons. The court also stated that the death of Oliphant, who had made the decision not to rehire Waddell, combined with the fact that the retaliation charge was not made until after Oliphant died, "undeniably makes Small Tube's defense more difficult," App. at 203, but the court did not decide whether the showing of increased "difficulty" as to Small Tube's defense constitutes sufficient prejudice for laches.

Instead, the court stated that Small Tube had not proved the first element, that dealing with lack of diligence. It did not decide whether Waddell showed a lack of diligence or whether his failure to act was excusable, but focused rather on whether "Waddell's inaction caused the administrative delay." The court explained:

Implicit in Small Tube's contention that Waddell's inaction caused the charge to lay dormant four and one-half years is the assumption that had Waddell communicated with EEOC, EEOC would have learned that PHRC had closed the case. This is not supported by the record. Waddell's prior letters to EEOC evoked no response. Three internal EEOC audits of Waddell's charge and the passage of four and one-half years did not prompt EEOC to question PHRC concerning its compliance activities. It was only after PHRC notified EEOC that it had closed the case that EEOC took action. *There is no affidavit from EEOC showing that had Waddell continued writing to EEOC, the agency would have taken action.*

App. at 201 (emphasis added).

In a later opinion, the district court reiterated its view of the law of laches when it said,

This Court, in its Memorandum Opinion [denying Small Tube's motion for summary judgment] previously decided that it could not conclude that Waddell's inaction caused the administrative delay.

App. at 621. Small Tube argues that the district court erred in requiring it to prove that the plaintiff's lack of diligence caused the EEOC to delay the processing of plaintiff's charges. Our review of the legal elements of the defense of laches is plenary.

The district court did not cite any authority for or explain why one who asserts laches against a party awaiting action by the EEOC must show that the EEOC would have acted had it received a communication from the charging party. Such a requirement appears to be inconsistent with the generally accepted view of laches which, as a derivative of equity, looks to the responsibility of the plaintiff. As discussed in Pomeroy's treatise, "A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights, and acquiesced for a great length of

time." J. Pomeroy, II Equity Jurisprudence § 419 at 171 (S. Symons 5th ed. 1941). Thus, laches entails an inquiry into whether the party is deserving of the court's relief. It follows that even though another party may have contributed to the delay, the court still must determine whether plaintiff's own delay or inaction was inexcusable.

■ Waddell had the responsibility to act diligently under the circumstances. Although it appears from our review of the record that the behavior of the PHRC was characterized by inexcusable delay and bureaucratic ineptitude,[3] neither the PHRC's action nor that of the EEOC should shift the inquiry into the first element of laches away from Waddell.

The burden the district court imposed on Small Tube to prove laches was not only unprecedented, but insurmountable. There was already on the record the affidavit of Eugene V. Nelson, area director of the EEOC's Pittsburgh office, stating:

The six-year delay between the time Mr. Waddell filed his initial "failure to rehire" complaint with the PHRC and the time the EEOC issued its "reasonable cause" determination was occasioned not by a lack of due diligence on the part of the EEOC—or by anything which Mr. Waddell did or didn't do—but by the PHRC's failure to notify the EEOC in a timely fashion of the termination of its proceeding.

App. at 91. It is difficult to understand what evidence Small Tube, as a private party, could have adduced to prove what response the EEOC would have made had Waddell communicated with the agency during the 4½ year hiatus.

The EEOC's delay in proceeding is pertinent to the first element of laches insofar as it bears on the reasonableness of Waddell's conduct in waiting for some word from that agency. Causation is pertinent, not to the first element but to the second, because Small Tube had the responsibility to show that the delay caused the prejudice which it asserts. See Boone v. Mechanical Specialties Co., 609 F.2d at 958–59; Bernard v. Gulf Oil Co., 596 F.2d 1249, 1256–57 (5th Cir.1979), aff'd, 452 U.S. 89 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). The district court erred as a matter of law in misapprehending the elements of laches and in failing to make the requisite findings on whether Small Tube had established those elements.

Small Tube argues that on the basis of the undisputed facts, it proved a defense of laches as a matter of law and it asks us to direct dismissal of plaintiff's claim. We do not agree that the decision is so clear-cut that we can pretermit the district court's consideration and findings.

The time of the delay here, although clearly not insignificant, is substantially less than the time that elapsed in some of the other cases where the courts found the defense of laches had been established. See, e.g., Jeffries v. Chicago Transit Authority, 770 F.2d at 680 (where EEOC took no action for eight years after the defendant had responded to notice of plaintiff's charge, and where plaintiff "did nothing for at least nine years", neither writing nor calling the EEOC, laches barred plaintiff's claim because he "should at least have reached the agency"); McLemore v. Interstate Motor Freight, Inc., 33 Fair Empl. Prac.Cas. at 1389 (plaintiff was barred by 8½ year delay where she had been in contact with the EEOC almost once a year, she was aware of her private remedy after four years and where "it cannot be said that [she] might have entertained any opinion that her claim was being actively pursued by EEOC"); see also Boone v. Mechanical Specialties Co., 609 F.2d at 958–59 (where plaintiff waited seven years to request

---

3. For example, in addition to its failure to notify the EEOC for 4½ years of the completion of its inquiry, the PHRC sent Waddell a patently inapplicable notice relating to a handicap disability. When it discovered that error in June, 1977, the PHRC did not notify Waddell, because, as the assistant general counsel wrote in a memorandum, "Of course, [the mistake] may be academic in light of the fact that the complainant has chosen not to respond to this letter of closing, despite its inaccuracy." App. at 129.

right to sue letter despite being asked frequently whether he wanted one, and where "the EEOC kept the file open at [plaintiff's] request", laches barred plaintiff's claim). *But see Breeding v. St. Louis-San Francisco Railway Co.*, 33 Fair Empl.Prac. Cas. 1514, 1515–16 (N.D.Ala.1977) (laches barred plaintiff's claim where there was absolutely no contact between plaintiff and EEOC for five years after charge filed).

█ On the other hand, plaintiffs may reasonably delay while the EEOC is actively engaged in the administrative process, *see Bernard v. Gulf Oil Co.*, 596 F.2d at 1256–57 (where plaintiffs had waited nine years from the time they filed their charge until they brought a lawsuit, "plaintiffs' failure to file a private action until after the termination of the EEOC's active, continuing administrative process" was not "inexcusable delay and could not support the application of laches"); *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1532–33 (11th Cir.1984) (plaintiff's delay in waiting four years for completion of EEOC process was not inexcusable); *Fowler v. Blue Bell, Inc.*, 596 F.2d 1276, 1278–79 (5th Cir.1979) (plaintiff's delay during five year EEOC process not inexcusable), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 671, 62 L.Ed.2d 648 (1980); *see also Gifford v. Atchison, Topeka & Santa Fe Railway Co.*, 685 F.2d 1149, 1152 (9th Cir.1982). In considering whether to apply laches to a plaintiff who has waited for administrative action, the court must neither undermine the EEOC's capacity to investigate charges of discrimination, *Great A & P*, 735 F.2d at 81, nor undercut congressional policy of favoring reliance by plaintiffs "on the administrative process of the EEOC." *Bernard v. Gulf Oil Co.*, 596 F.2d at 1257.

In sum, although plaintiffs have some obligation to monitor the progress of their charge and do not have the absolute right to await termination of EEOC proceedings where it would appear to a reasonable person that no administrative resolution will be forthcoming, whether the circumstances warranted the delay in a particular case requires an ad hoc determination.

█ Here, Waddell waited 4½ years, but he had written two letters to the EEOC, neither of which elicited any reply. Waddell testified that he did not know of his right under the statute to request a right to sue letter. *See* 42 U.S.C. § 2000e–5(f)(1); 29 C.F.R. § 1601.28 (1985) (charging party entitled to right to sue letter 180 days after a charge has been filed). While one court has said that "[t]he statute is somewhat unclear but a lay person would know at least that the EEOC could do something in 180 days," *Jeffries v. Chicago Transit Authority*, 770 F.2d at 680, in *Howard v. Roadway Express Co.*, 726 F.2d at 1532–33, the court held that even when plaintiff and his counsel knew of their right to request issuance of a right to sue letter, they were free to await termination of the administrative process. We note that Waddell has only a seventh grade education and, at the time in question, had no counsel.

The arguments on each side of the laches issue have merit. Neither party is so clearly entitled to a decision that we can say that as a matter of law the decision should be made in its favor. "[T]he conclusion that a delay is 'inexcusable' comprehends both the application of a legal standard and an exercise of the trial court's sound discretion in assessing the equitable circumstances of a particular case." *Churma v. United States Steel Corp.*, 514 F.2d 589, 593 (3d Cir.1975). This is an appropriate situation for the trial court to exercise its discretion.

## IV.

### Backpay Award

In its ruling on backpay which was made in its third opinion, the district court stated that, "Title VII places an affirmative duty on the plaintiff to mitigate his back pay losses"; that "Waddell sought, obtained and held a variety of jobs during the period of the unlawful discrimination [in this case the unlawful failure to rehire]"; that Waddell was "highly credible"; and that "[a]t no time did Waddell refuse to accept a job that was offered to him." App. at 618.

Because Waddell had worked for some of the period after 1977, the district court computed his backpay remedy by subtracting Waddell's actual earnings in each year since 1976 from the amounts the court determined Waddell would have earned had he been rehired by Small Tube. For those years that Waddell's actual earnings exceeded the lost wages, the court held he was not entitled to anything. There are no issues relating to the computation of the backpay before us.

However, Waddell cross-appeals from the district court's judgment because the district court held that Waddell was barred from recovering backpay during the period of September, 1977 until March, 1982 "by the doctrine of laches". Waddell contends that the district court's action in this regard was an abuse of discretion because the court never made findings that there was inexcusable delay or a lack of diligence on Waddell's part.

As we have already held in part III above, a district court may not find laches without finding first that the plaintiff is guilty of inexcusable conduct. As we noted above, the district court never made such a finding in ruling on Small Tube's motion for summary judgment. Again, it made no such finding in its opinion on the backpay remedy.

The complete discussion of the delay in the backpay opinion is as follows:

*Delay*

It is not disputed that Waddell's charge mistakenly lay dormant at EEOC for four and one-half years. Nor is it disputed that Waddell, himself, has admitted: "It didn't seem to me like they was doing so much so I more or less shelved it, you know."

This Court, in its Memorandum Opinion and Order dated March 1, 1985, previously decided that it could not conclude that Waddell's inaction caused the administrative delay. The issue presently before the Court concerns the equitable apportionment of the events that occurred while Waddell's claim lay dormant for four and one-half years: Small

Tube's back pay liability continued to accrue and its ability to defend itself diminished.

App. at 620–21.

The court then determined that because "[t]he present charge that Waddell was not rehired in retaliation for filing a prior charge, was not raised until EEOC issued its reasonable cause determination in August 1982, more than two years after Oliphant's death [in June, 1980]," and it was "Oliphant's motive that was at issue in this case," App. at 621, Small Tube

suffer[ed] prejudice due to the death of its principal witness [and] potentially faces back pay liability spanning more than eight years. Due to the equitable nature of the back pay remedy, it would be unjust for Small Tube to bear the onerous financial responsibility for the period during which Waddell "shelved his claim." Therefore, Waddell will be barred by the doctrine of laches, from recovering back pay during the period of September, 1977 until March, 1982.

App. at 622.

It is undisputed that Waddell "shelved" his charge for 4½ years. The analytic hiatus in the district court's decision is whether, under all of the circumstances, the "shelving" was excusable or not. Just as a decision on laches as a defense requires a finding whether Waddell's delay was excusable or not, so also does a decision that laches can be used to bar part of Waddell's backpay claim.

■ Although backpay is an equitable remedy and its award is subject to the discretion of the district court, the court may not bar plaintiff when his conduct was reasonable under the circumstances. As the Supreme Court has stated, "when a Title VII defendant is in fact prejudiced by a private plaintiff's *unexcused* conduct of a particular case, the trial court may restrict or even deny backpay relief. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424–25, 95 S.Ct. 2362, 2374–75, 45 L.Ed.2d 280 (1975)." *Occidental Life Insurance Co. of California v. EEOC*, 432 U.S. 355, 373, 97

S.Ct. 2447, 2457–58, 53 L.Ed.2d 402 (1977) (emphasis added). In *Albemarle,* the Court stated that in Title VII suits:

> backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.

422 U.S. at 421, 95 S.Ct. at 2373.

 The statutory purposes articulated in *Albemarle* would patently be frustrated by a reduction of backpay when plaintiff's delay was not found to be unreasonable. It follows that the case must be remanded so that the district court may make the pivotal findings on whether Waddell's conduct was excusable and whether Small Tube suffered sufficient prejudice to warrant application of laches.

 As this court suggested in *Great A & P,* even if the district court finds that the elements of laches have been proven, the district court in the exercise of its discretion "must take into account whether or not a less drastic form of equitable relief than a complete dismissal of the action would have been more appropriate." 735 F.2d at 81. Laches, as an equitable doctrine, differs from the statute of limitations in that it offers the courts more flexibility, eschewing mechanical rules. For example, in *Kamberos v. GTE Automatic Electric, Inc.,* 603 F.2d 598, 603 (7th Cir.1979), *cert. denied,* 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981), the court held, without specifically mentioning laches, that where a Title VII plaintiff "permitted her complaint to lie dormant with the EEOC for over four years", backpay period should have been accordingly reduced. Similarly, in *Richardson v. Delta Drayage Co.,* 433 F.Supp. 50, 52–53 (E.D.La.1977), the court found that defendant's ability to defend against the claim was not prejudiced and held dis-

missal of the suit was inappropriate but stated that it might later disallow a portion of the backpay award on the ground of laches.

Small Tube argues that the prejudice it suffered involved its ability to defend against the entire claim, and therefore a finding of laches should result in the barring of that claim, and not merely a reduction in damages. If the district court determines that Waddell's conduct was inexcusable and that Waddell's delay prejudiced Small Tube's defense so substantially as to warrant dismissal, that decision, which would entail lifting its order directing Small Tube to reinstate Waddell, is within the scope of its discretion. In connection with its ruling on prejudice, however, we observe that when it stated that the charge of retaliatory failure to rehire was not raised until after Oliphant's death, it appears to have overlooked that Waddell raised the failure to rehire in his motion for reconsideration to the PHRC on August 24, 1976 and that Small Tube and Oliphant were aware of that claim and responded with Oliphant's version of the rehiring incident.[4]

To some extent, the Title VII statutory scheme protects a defendant from prejudice from the prosecution of stale claims by alerting it to the possibility of an enforcement suit, so that it has an opportunity to gather and preserve evidence in anticipation of a court action. *See Occidental Life Insurance Co. of California v. EEOC,* 432 U.S. at 372, 97 S.Ct. at 2457. Nonetheless, the district court may find that since Oliphant's motive was an important factor at trial, Small Tube's prejudice was substantial enough to warrant dismissal.

### V.

#### Conclusion

To summarize, on remand the district court should determine whether the ele-

---

**4.** In response to Waddell's request for reconsideration, Oliphant stated, in part:

.... Mr. Waddell's statement that the Company was hiring former employees "That was accused of stealing and everything" is fanciful. The Company did not hire any former

employee, let alone one who had been accused of stealing or who had been previously discharged for cause.

App. at 224. In this action, Small Tube admitted that Oliphant himself had approved the hiring of two former employees. App. at 187, 189.

ments of laches, inexcusable delay by plaintiff and consequential prejudice to defendant, have been established. If both elements of laches have not been established, then Waddell will be entitled to an award of his backpay without the reduction for the years while he waited for action by the EEOC. If both elements have been established, the district court should then determine, in its discretion, what is the appropriate remedy.

For the foregoing reasons, we will vacate the judgment of the district court and remand to that court for further proceedings consistent with this opinion.