The CLEVELAND NEWSPAPER GUILD, LOCAL 1, et al., Plaintiffs–Appellants,

v.

The PLAIN DEALER PUBLISHING CO., Defendant–Appellee.

No. 86–3140.

United States Court of Appeals, Sixth Circuit.

Reargued Aug. 5, 1987.

Decided Feb. 11, 1988.

---

George W. Palda (argued), Berkman, Gordon, Murray & Palda, Cleveland, Ohio, for plaintiffs-appellants.

Karen B. Newborn, Baker & Hostetler, Elliot S. Azoff (argued), Cleveland, Ohio, for defendant-appellee.

Gale Barron Black, U.S. E.E.O.C., Washington, D.C., amicus curiae.

Before LIVELY, Chief Judge,
ENGEL, KEITH, MERRITT,
KENNEDY, MARTIN, JONES,
KRUPANSKY, WELLFORD,
MILBURN, GUY, NELSON, RYAN,
BOGGS, and NORRIS, Circuit Judges,
and EDWARDS, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

This appeal involves the applicability of the doctrine of laches to bar a Title VII employment discrimination claim. 42 U.S.C. § 2000e–2. Specifically, we are asked to decide whether a claimant who awaits the outcome of the Equal Employment Opportunity Commission's (EEOC) administrative proceedings for a period of ten years before filing suit has caused inexcusable delay sufficient to justify the application of the doctrine of laches. The district court found the delay to have been inexcusable and, since it also found that the delay resulted in prejudice, it granted defendant's motion for summary judgment. We affirm.

### I.

The facts are essentially uncontroverted. On April 12, 1972, the Cleveland Newspaper Guild (Guild), on behalf of its female members, filed a charge with the EEOC alleging sex discrimination in merit pay, promotions, assignments, and other terms and conditions of employment at The Plain Dealer Publishing Company. On May 8, 1972, defendant was sent a form notice of the charge of employment discrimination. The notice did not name the person or persons bringing the charge; however, it did state that "[s]ection 1602.14 of the Commission's Regulations requires the preservation of all relevant personnel records until this charge is resolved." Additionally, the notice asked that defendant withhold any questions about the complaint until the investigation commenced. The form stated that it was uncertain when defendant would be contacted in connection with the investigation due to the EEOC's "heavy backlog of pending work."

On April 12, 1974, the EEOC sent the Guild a form notice entitled "Charging Party Follow-up." It stated that the EEOC had not been able to process the charge and could not predict when it would begin to do so. Therefore, it asked the Guild to choose one of three courses of action: (1) keep the charge open and have it processed when the EEOC could attend to it, (2) sue the Plain Dealer in federal court, or (3) close the charge without further action. In a letter dated September 4, 1974, Jack Weir, then Executive Secretary of the Guild, indicated the Guild's decision to have the EEOC continue to process the charge.

The EEOC's investigation began in May of 1976. On May 19, 1976, counsel for the Plain Dealer was given a copy of Charge No. 1613 filed by the Guild on April 12, 1972. This is the first time that the Plain Dealer became aware of who had filed the charge and why. On June 22, 1976, the Plain Dealer requested that the EEOC dismiss the charge and cease its investigation, asserting that the four-year delay had substantially impaired the Plain Dealer's ability to respond to the charge. On June 24, 1976, the EEOC notified the Plain Dealer that it would not dismiss the charge, and it requested documents and information regarding Guild employees for the previous six years. The Plain Dealer refused to submit the requested information.

On August 25, 1976, the EEOC issued a subpoena demanding production of the documents previously requested. The Plain Dealer then filed, on September 1, 1976, a petition to revoke and/or modify the subpoena. Over one year later, in September of 1977, the EEOC denied revocation and directed the Plain Dealer to appear at the EEOC for production of the documents. On October 17, 1977, counsel for defendant wrote the EEOC that it would not appear in the offices of the EEOC as ordered. Nothing further occurred in this case until July 30, 1979, when Guild Secretary J. Stephens Hatch wrote to the EEOC concern-

ing the status of the charge. Almost a year later, on June 17, 1980, the EEOC notified defense counsel that the Commission would not seek to enforce the subpoena of August 25, 1976.

On July 3, 1980, the Plain Dealer submitted a position paper in response to the Guild's charge. It stated that because of the lapse of time, management personnel and documents relevant to the charge were no longer available. On October 10, 1980, the EEOC issued a finding of reasonable cause and thereafter attempted to commence conciliation efforts. The attempt proved fruitless and, on May 21, 1982, the EEOC issued a right to sue notice to the Guild. The Guild then filed this suit in the district court on August 18, 1982. The defendant filed a motion for summary judgment based on the affirmative defense of laches, and the district court granted the motion.

The trial court determined that plaintiffs had failed to provide sufficient explanation for the ten-year delay in bringing suit. The trial court also found prejudice to the defendant in the form of unavailable witnesses, destruction of documentary evidence, and erosion of available witnesses' memories. As to the EEOC's notice to defendant to retain personnel records, the court found it too ambiguous to serve as a valid command. Accordingly, the court entered judgment for defendant.

On appeal, plaintiffs contend that the defense of laches will not lie to effect dismissal of a Title VII complaint brought by claimants who choose to await completion of the EEOC's administrative process before filing suit. Assuming that the doctrine of laches may be invoked, however, plaintiffs contend that they acted reasonably and did not inexcusably delay the proceedings. Plaintiffs also argue that defendant is barred from asserting the laches defense based on the doctrine of unclean hands.

## II.

A Title VII claimant must file a claim with the EEOC (in a nondeferral state) within 180 days after the allegedly discriminatory act. 42 U.S.C. § 2000e–5(c). Once EEOC proceedings have terminated and the agency issues its right to sue notice, the claimant has 90 days to file suit in federal court. *Id.* at § 2000e–5(f)(1). If, however, the EEOC proceedings are still in progress, a claimant *may* request a right to sue letter 180 days after filing of the charge. *Id.* This 180–day provision is not a statute of limitations. *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 361, 97 S.Ct. 2447, 2451, 53 L.Ed.2d 402 (1976). "[I]t simply provides that a complainant whose charge is not dismissed or promptly settled or litigated by the EEOC may himself bring a lawsuit, but that he must wait 180 days before doing so." *Id.* Thus, while there are no statutory limitations facing Title VII claimants awaiting EEOC action, we must decide whether equitable considerations affect a Title VII claimant's decision to indefinitely delay bringing suit.

### A.

Equitable considerations have influenced the Supreme Court in the context of Title VII. In *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), the district court denied an award of back pay because the respondents initially disclaimed any interest in back pay, first asserting their claim five years after the complaint was filed. The district court concluded that the defendants had been prejudiced by this conduct. The Supreme Court agreed that a party may not be entitled to relief if its conduct of the cause has improperly and substantially prejudiced the other party. 422 U.S. at 424, 95 S.Ct. at 2375. The Court noted that district courts have discretion to locate "a just result" in light of the circumstances peculiar to the case, *Langnes v. Green*, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931), and that to deny back pay because a *particular* cause has been prosecuted in an eccentric fashion, prejudicial to the other party, did not offend the broad purposes of Title VII. 422 U.S. at 424, 95 S.Ct. at 2374 (emphasis supplied).

In *Occidental Life Ins. Co. v. EEOC*, 432 U.S. at 355, 97 S.Ct. at 2449, the Court

addressed whether any time limitation is imposed on the EEOC's power to bring suit in federal court once a claim has been filed. That case had been filed by the EEOC approximately three years and two months after the complainant first communicated with the EEOC, and five months after conciliation efforts had failed. 432 U.S. at 358, 97 S.Ct. at 2450. While the Court rejected the argument that the EEOC was required to bring an enforcement action within 180 days of the filing of the charge, it also recognized the possibility that, despite procedural protections afforded a Title VII defendant, delay in bringing suit could cause prejudice. *Id.* at 373, 97 S.Ct. at 2457. But in that case, the Court noted, "the federal courts do not lack the power to provide relief." *Id.*

### B.

Against the backdrop of these cases, the courts of appeals have disagreed as to whether the application of equitable principles to Title VII cases permits a dismissal based on laches when, as here, a claimant chooses to await the termination of EEOC proceedings.

In *Bernard v. Gulf Oil Co.,* 596 F.2d 1249 (5th Cir.1979), *on rehearing en banc,* 619 F.2d 459 (5th Cir.1980), *aff'd,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981), the Fifth Circuit acknowledged that laches could apply to a Title VII case so as to bar an action; however, the court refused to hold that plaintiffs' failure to file their Title VII claim until completion of the EEOC process, some nine years later, constituted inexcusable delay. During that time, the EEOC was engaged in active conciliation efforts and, in fact, a conciliation agreement had been reached one month before plaintiffs filed suit. 596 F.2d at 1253. *Accord Fowler v. Blue Bell, Inc.,* 596 F.2d 1276 (5th Cir.1979), *cert. denied,* 444 U.S. 1018, 100 S.Ct. 671, 62 L.Ed.2d 648 (1980).

The Ninth Circuit has also held that laches may be used as a defense to a Title VII action. *Boone v. Mechanical Specialties,* 609 F.2d 956, 959 (9th Cir.1979). In *Boone,* the EEOC charge remained pending for almost seven years, while Boone repeatedly refused the EEOC's offer of a right to sue letter and asked the EEOC to keep his file open. 609 F.2d at 959. In the meantime, defendant suffered prejudice in the form of lost witnesses and documentary evidence. The court held that laches barred the plaintiff's action due to his unexcusable delay, especially in the absence of continuing administrative proceedings. *Id.* at 960. Subsequently, however, the Ninth Circuit has repeatedly denied defendants relief based on laches, emphasizing that *Boone* stated the exception and not the general rule. *See Bratton v. Bethlehem Steel Corp.,* 649 F.2d 658 (9th Cir.1980) (four-year delay was not inexcusable where plaintiffs did not delay in requesting right to sue letters and no prejudice to defendant shown); *Gifford v. Atchinson Topeka and Santa Fe Ry. Co.,* 685 F.2d 1149 (9th Cir.1982) (ordinarily, if the EEOC retains control over a charge, a private plaintiff will not be charged with its mistakes); *Brown v. Continental Can Co.,* 765 F.2d 810 (9th Cir. 1985) (EEOC delays are not to be charged against private plaintiffs and complainants are not required to terminate the administrative process by requesting a notice of right to sue).

In *Rozen v. District of Columbia,* 702 F.2d 1202 (D.C.Cir.1983), twenty-one months passed between the EEOC's determination of no reasonable cause to believe the discrimination allegation was true and the issuance of the right to sue notice. In dismissing his suit, the district court determined that Rozen had unreasonably and inexcusably delayed filing suit, and that defendant had been prejudiced by the delay. 702 F.2d at 1203. The court of appeals reversed. The court acknowledged that laches may apply to Title VII actions, but found the defense unsupportable on the record presented. *Id.* at 1204. The court refused to hold Rozen accountable for the delay in the issuance of the right to sue notice, distinguishing those cases where a plaintiff fails to file suit when that option is known and within the plaintiff's power. *Id.* (citing *EEOC v. Dresser Industries, Inc.,* 668 F.2d 1199 (11th Cir.1982), and *Boone, supra* ).

The Eleventh Circuit agreed in *Howard v. Roadway Exp., Inc.*, 726 F.2d 1529 (11th Cir.1984). Howard filed a charge with the EEOC in December, 1976. In 1978, Howard's attorney requested issuance of a right to sue letter, but later withdrew that request. In December, 1981, the EEOC determined that there was no reasonable cause to believe plaintiff's allegations and issued notice of right to sue. When plaintiff filed suit in March, 1982, defendant moved to dismiss, arguing that laches barred plaintiff's claim, and emphasizing plaintiff's early knowledge of his cause of action and his ability to obtain a right to sue letter as indicative of inexcusable delay. 726 F.2d at 1532. The Eleventh Circuit, too, recognized that the doctrine of laches could be applied, but held that Howard's failure to file his Title VII claim until completion of the EEOC process was not inexcusable delay and could not support the application of laches. *Id.* at 1533. The court distinguished its earlier *Dresser* decision, 668 F.2d at 1199, where the doctrine of laches was applied to an action filed by the EEOC, stating that the *Dresser* court had not suggested that inexcusable delay attributable to the EEOC could be transferred to the plaintiff in a private suit. *Id.*, 726 F.2d at 1533 n. 2.

In contrast is *Jeffries v. Chicago Transit Authority*, 770 F.2d 676 (7th Cir.1985), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986), where plaintiff filed his race discrimination claim with the EEOC in November, 1974. The EEOC notified defendant of the charge, and it responded in December, 1974, denying the allegation of discrimination. The EEOC took no further action on the claim until June 9, 1982, when it informed the defendant that reasonable cause existed for the discrimination claim and invited the defendant to participate in conciliation. Defendant responded that the EEOC had lost jurisdiction over the matter due to the eight-year delay. A right to sue notice was issued in January, 1984. The Seventh Circuit affirmed the district court's dismissal based on the doctrine of laches, finding the ten-year delay to be manifestly unreasonable. 770 F.2d at 680. The court rejected

plaintiff's major justification—ignorance of the statute and regulations giving him the option to request a right to sue letter—stating that plaintiff should have known of his power to prod the agency through the language of the statute. *Id.* at 680. Accordingly, the court held that relying on the administrative process could not excuse a delay of this length and that plaintiffs must show "some interest in prosecuting their claims." *Id.* at 680–81.

The Third Circuit, in *Waddell v. Small Tube Products, Inc.*, 799 F.2d 69 (3d Cir. 1986), also agreed that laches on the part of the plaintiff could support dismissal of a Title VII claim. Waddell's claim for unlawful termination was filed with the EEOC in March, 1975, and with the corresponding state agency in December, 1975. In August, 1976, the state agency dismissed the claim. Waddell requested reconsideration by the state agency, and also filed a new charge for failure to rehire. In October, 1976, the state agency denied the petition for reconsideration but, in January, 1977, it prepared a formal complaint based on the failure to rehire charge. The complaint was then referred to the EEOC for filing. The EEOC stated that it would assert jurisdiction on the sixtieth day after the charge was filed with the state agency, but would not engage in any compliance activities until the state agency had completed its investigation. The state agency then dismissed the complaint on the ground that the identical issues had been disposed of when it denied Waddell's petition for reconsideration. The state agency's letter notifying Waddell of the dismissal of his charge was sent April 29, 1977.

The state agency failed to notify the EEOC when it dismissed Waddell's charge, as it was obliged to do. In fact, the agency did not send the EEOC any such notification until November 30, 1981, more than four and one-half years later. In the meantime, Waddell wrote two letters to the EEOC about his case. When the EEOC finally was notified of the state agency's closing of the case, it conducted an investigation and determined that there was no reasonable basis to believe Waddell had

been subject to discrimination, but that there was reasonable cause to believe Waddell had not been rehired in retaliation for the charges he originally brought. Waddell received a right to sue letter in June, 1983, and brought suit in August, 1983.

After reviewing the cases discussed above, the Third Circuit concluded that, although plaintiffs have some obligation to monitor the progress of their charge and do not have the absolute right to await termination of EEOC proceedings where it would appear to a reasonable person that no administrative resolution will be forthcoming, whether the circumstances warrant the delay in a particular case must be decided on an *ad hoc* basis. 799 F.2d at 77. The circumstances which the court felt militated against the application of laches were that Waddell had written two letters to the EEOC, neither of which had elicited any reply; Waddell testified that he did not know of his right under the statute to request a right to sue letter; and Waddell had only a seventh grade education, and at the time in question, had no counsel. *Id.* At the same time, the court found the arguments on both sides of the laches question to have merit. Accordingly, it concluded that the situation was appropriate for the trial court's exercise of discretion, and affirmed the district court's refusal to dismiss based on laches. *Id.*

Finally, in *Whitfield v. Anheuser–Busch, Inc.*, 820 F.2d 243 (8th Cir.1987), the Eighth Circuit affirmed the dismissal of plaintiff's case based on the doctrine of laches. While plaintiff filed his charge with the EEOC in January, 1973, and the EEOC held a hearing in October, 1974, the case then remained dormant for almost ten years, until June, 1983, when the EEOC issued a right to sue notice. Because Whitfield made no attempts to check on the status of his charge, and had not provided any meaningful explanation for his long silence or denied that he knew he could request a notice of right to sue, the court affirmed. *Id.* at 245.

In sum, each court to have considered the question agrees, at least in theory, that the doctrine of laches can bar a Title VII

action. These cases also illustrate the fact-dependent nature of the inquiry, as well as the necessity for the reasoned exercise of discretion on the part of trial courts.

### III.

The defense of laches "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). We conclude that the doctrine of laches, like other equitable considerations, should be applicable to a Title VII proceeding in practice as well as theory. At the same time, we understand the reluctance courts have shown in dismissing cases based on delay attributable at least in part to the EEOC. This reluctance is understandable in light of the fact that Title VII is "remedial legislation dependent for its enforcement on laymen." *Bethel v. Jefferson*, 589 F.2d 631, 642 (D.C.Cir.1978). Moreover, as recognized by the Court in *Occidental Life*, 432 U.S. at 367–68, 97 S.Ct. at 2454–55, the administrative resolution of claims is the preferred method. We are not unmindful of these concerns. Nevertheless, in rare cases, the only avenue for relieving unfair prejudice to the defendant is dismissal of the plaintiff's claim.

Those cases that appear to allow claimants an unqualified right to await indefinitely termination of the administrative process often speak to the fact that claimants cannot be held responsible for the delays occasioned by the EEOC. But whether another party contributes to the delay is only one factor in assessing the reasonableness of a plaintiff's actions. The question is not purely one of assigning fault. As stated in Pomeroy's treatise: "A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights, and acquiesced for a great length of time. Nothing can call forth ... [the] court into activity but conscience, good faith and reasonable diligence." J. Pomeroy, II Equity Jurisprudence, § 419 at

171 (S. Symons 5th ed. 1941). Thus, even though another party may have contributed to the delay, the court still must determine whether plaintiff's own delay or inaction inexcusably caused prejudice to the defendant.

### IV.

The district court found that both elements of the laches defense had been satisfied; that is, that plaintiffs' lack of diligence had prejudiced the defendant. As to lack of diligence by plaintiffs, the court indicated that because of the fact the Guild was a labor union, with specific knowledge and responsibility in equal employment opportunity matters, it could not reasonably account for its continued inaction during the extended period that the charge was pending. It was undisputed that the Guild knew of its ability to obtain a right to sue notice and institute a civil action. And while the district court did not fault the Guild for initially refusing the first offer of a right to sue letter, the court was justifiably troubled by the lack of activity over the next eight years. The court also specifically referred to the lack of Guild contacts with the EEOC during that period.

■ Likewise, as noted by the district court, there was little EEOC activity during this time which could explain plaintiffs' failure to act. The EEOC did not take enforcement action on the subpoena issued to discover relevant information. Moreover, no conciliation ever occurred. In other words, there was nothing ongoing which the Guild could point to in order to justify its inaction.[1]

The Guild now argues that it was defendant who delayed the administrative process, by refusing to cooperate with the EEOC. This argument ignores, however, the prejudice resulting from the four-year delay that occurred before defendant received a copy of the charge and, further, it

erroneously presupposes that defendant's assertion of prejudice at that point was somehow wrongful. In short, this contention does not persuade us that the court erred in finding inexcusable delay.

■ No one seriously disputes the district court's finding that defendant has suffered prejudice in the form of lost witnesses and documentary evidence. Affidavits submitted in the district court detail those witnesses who are no longer available to defendant and their specific knowledge as to the underlying dispute. The Guild argues, however, that defendant was informed that a sex discrimination charge had been filed and was ordered to retain all records, and, therefore, if defendant suffered prejudice, it was of its own making.

The district court found that the EEOC's notice to defendant to retain personnel records was too ambiguous to serve as a valid command. Under the specific circumstances of this case, we agree. It must be kept in mind that the defendant was not initially informed of any of the details of the charge. It was EEOC policy at that time not to send an actual copy of the charge. Accordingly, all defendant knew was that a charge of employment discrimination based on sex had been filed against it. It was not until four years after the filing of the charge that the defendant received an actual copy of it. In the meantime, it was, of course, impossible to determine which personnel records were "relevant" to the unknown charge. In any event, retention of records would still not alleviate the problem of witnesses who have become unavailable or whose memories have faded.

We find no error in the district court's application of the doctrine of laches under these circumstances.

### V.

■ We must also reject plaintiffs' argument that defendant is barred from eq-

---

1. On appeal, the Guild has asserted that part of the reason it delayed bringing suit was because it was monitoring a parallel charge against the Cleveland Press, which it believed would, when concluded, establish a precedent for the resolution of the charge filed against the Plain Dealer. This argument was not raised below and is not

properly before us. Consequently, we do not consider it. We note in passing, however, that the argument is not helpful to the Guild's position. The fact that the Guild felt it was in its interest to wait does little to offset as an equitable consideration the prejudice being suffered by the defendant.

uitable relief by the doctrine of unclean hands. The unclean hands doctrine derives from the equitable maxim that "he who comes into equity must come with clean hands." This maxim "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior" of the opposing party. *Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945).

While the defendant clearly refused to cooperate with the EEOC's administrative process, it asserted that by the time that process began, four years after the charge had been filed, it had already suffered prejudice. Defendant consistently maintained that position. There was no indication that this position was advanced in bad faith. Moreover, we have found no authority for the proposition that one resisting an administrative process by asserting a legal defense can be found to have unclean hands. Consequently, we do not believe that the doctrine of unclean hands operates here to deny defendant relief.

## VI.

We affirm the district court's holding because we believe that the court's power to "locate a just result" includes the possibility that a case may be dismissed on the basis of laches. We find no abuse of discretion in the court's dismissal of this case, nor clear error in its findings of lack of diligence on the part of the plaintiffs and prejudice to the defendant. We emphasize, however, that dismissal of a plaintiff's claim is an extreme result, and should be accomplished only when the prejudice to the defendant can be avoided in no other way. Accordingly, the judgment of the district court is AFFIRMED.

LIVELY, Chief Judge, concurring.

I concur fully in Judge Guy's opinion for the court and write separately merely to emphasize the fact that this court will treat defenses of laches in Title VII actions on a case-by-case basis. As this court and others have noted in requiring a liberal construction of Title VII, actions under this statute are often "filed by lay complainants who are unfamiliar with the niceties of pleading and are acting without assistance of counsel." *Tipler v. E.I. duPont deNemours & Co.*, 443 F.2d 125, 131 (6th Cir. 1971). However, that is not the situation in this case. Here the plaintiff is a union, thoroughly conversant with the requirements of Title VII and represented by highly qualified counsel. Moreover, the Guild has stated to this court that it delayed filing suit in this action because it was monitoring a parallel action against another newspaper. It apparently viewed the complaint against the *Cleveland Press* as presenting a stronger case of a violation and hoped for a favorable precedent to control or at least influence the decision in this case. Thus, we are not confronted with a situation in which an alleged discriminatee assumed that having filed a charge with the EEOC, he was required to await further action by the EEOC before seeking judicial relief.

We review application of the equitable doctrine of laches under an abuse of discretion standard, *Jeffries v. Chicago Transit Authority*, 770 F.2d 676, 681 (7th Cir.1985), and I find no abuse of discretion in the district court's application of the doctrine in dismissing the present action.

MERRITT, Circuit Judge, concurring.

I agree with the Court's laches argument in this en banc case if no statute of limitations is applicable.

It seems to me, however, that the Court ignores the fact that there is a statute of limitations written into the statute in question. Subsection (f)(1), 42 U.S.C. § 2000e–5(f)(1), says: "If a charge is filed with the commission" and "if within one hundred and eighty days from the filing of such charge ... the commission has not filed a civil action under this section ... or the commission has not entered into a conciliation agreement to which the person aggrieved is a party, the commission ... shall so notify the person aggrieved *and within ninety days after the giving of such notice a civil action may be brought*

against the respondent named in the charge...." The statute goes on to provide for a stay of the civil action in federal court for further conciliation: "Upon request, the Court may, in its discretion, stay further proceedings *for not more than sixty days* pending ... further efforts of the Commission to obtain voluntary compliance."

The mandatory language of this section requires the EEOC either to bring an action itself or enter into a conciliation agreement, failing which the commission "shall so notify" the charging party within 180 days. Here the commission failed to give any notice for two years. It seems to me that Congress plainly intended by enacting the ninety day filing requirement and the sixty day stay provision to require both the EEOC and the courts not to allow disputes under this section to fester and drag on indefinitely. I would therefore interpret this section to provide a 180 day EEOC conciliation period, at the end of which the employer can require the EEOC to send the contemplated notice. The court can then allow another period of "not more than sixty days" for conciliation; the judicial proceedings must then go forward. That is what the plain language of the statute contemplates, and that is the way it should be enforced.

The Second Circuit in *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306 (2d Cir. 1975), interpreted the 90 day requirement for filing a civil action as a statute of limitations for these disputes, and I agree. Under such an interpretation there is no need for the application of the "equitable" doctrine of laches because there is a "legal" statute of repose.

Here the EEOC did not give the required notice at the end of the 180 day period, and the employer did not insist on it. In such cases, the 90 day period is not triggered until the EEOC affirmatively notifies the charging party that it "has not entered into a conciliation agreement," thereby extending the 180 day period until EEOC notice is given. That notice was plainly given on April 12, 1974, two years after the charge was filed. The notice further advised the charging parties that they could sue in federal court since the EEOC had not been able to process the case. The 90 day period began to run at that time, and it would have run long before this suit was brought.

We should not permit the EEOC to alter the clear language of the statute by regulation. The regulations set up a procedural regime which is inconsistent with the procedure contemplated by 42 U.S.C. § 2000e–5(f)(1). The regulations provide that an aggrieved party may request notice of right to sue and the EEOC shall issue such notice "at any time after the expiration" of 180 days from the date of filing of the charge. 29 C.F.R. § 1601.28(a)(1) (1987). The regulations further purport to authorize aggrieved persons to bring a civil action within 90 days from the receipt of the notice of right to sue. 29 C.F.R. § 1601.28(e)(1) (1987). The statute, however, clearly states that if within 180 days from the filing of the charge, the commission has not filed a civil action or entered into a conciliation agreement, the commission must notify the aggrieved person and *"within ninety days* after the giving of such notice a civil action may be brought...." 42 U.S.C. § 2000e–5(f)(1). This language clearly contemplates that the notice from the EEOC be timely and that the 90 day statute of limitations run from that notice. In this case, the Guild received the notice contemplated by the statute in 1974, thus triggering the 90 day statute of limitations.

It seems to me that this 90 day period should be used as the period of limitations in light of the words of the statute. In view of the conflicts in the circuits and the confusion with respect to the applicability of the 90 day statute of limitations, I would apply this rule prospectively as did the Second Circuit in the *DeMatteis* case, not retroactively. *See DeMatteis v. Eastman Kodak Co.*, 520 F.2d 409 (2d Cir.1975) (on rehearing). Normal tolling doctrines, including equitable tolling, should apply. *See Morgan v. Washington Mfg Co.*, 660 F.2d 710 (6th Cir.1981). I would emphasize that I agree with the court that there must be a laches period if the 90 day language of

the statute is not applied.[1]  Otherwise the dispute could drag on for fifty years or more.  Immortality is divinely to be wished for lawyers but not for their lawsuits and their appeals.

DAVID A. NELSON, Circuit Judge, concurring.

I concur fully in the court's opinion, except insofar as the first paragraph of Part II might lend itself to the interpretation that we are saying the EEOC is automatically foreclosed from taking any further action once it has started the 90–day clock running, under 42 U.S.C. § 2000e–5(f)(1), by giving notice that the government has neither filed a civil action nor entered into a conciliation agreement.  If, as Judge Merritt believes, the notice given by the EEOC in April of 1974 was such a notice[1]—an issue that has not been briefed by the parties and that I would prefer not to decide without the benefit of full briefing—it seems to me that even though the EEOC did not consider itself foreclosed from going forward with the administrative proceedings, and probably was not foreclosed from doing so, the Plain Dealer might very well have had a statute of limitations defense against the private action once the 90 days had run without the Guild having filed suit.

In light of *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)—a decision handed down seven years after the Court of Appeals for the Second Circuit issued its decision in *De Matteis v. Eastman Kodak Co.*, 511 F.2d 306 (2d Cir.1975)—it appears probable that the 90–day filing period operates as a statute of limitations and not as a jurisdictional requirement.  A statute of limitations defense is subject to waiver (*Zipes*, 455 U.S. at 393, 102 S.Ct. at 1132), and because that defense does not clearly appear on the face of the complaint and has never been raised in the answer or by

motion to dismiss, I assume it has been waived.  See *Crawford v. Zeitler*, 326 F.2d 119 (6th Cir.1964), and *Pierce v. County of Oakland*, 652 F.2d 671 (6th Cir.1981).  Again, however, this is an issue that I would prefer not to decide without the benefit of full briefing.

I agree with Judge Edwards that the case before us is essentially a suit in equity.  Accordingly, I see nothing novel in applying the equitable defense of laches here.  *Cf. Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 373, 97 S.Ct. 2447, 2457, 53 L.Ed.2d 402 (1977), and *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424–25, 95 S.Ct. 2362, 2374–75, 45 L.Ed.2d 280 (1975).  It is true that courts of equity will not normally apply the doctrine of laches before a limitations period prescribed by the legislature has expired, but there is nothing inequitable about resorting to laches after the statute of limitations has run, where the defendant has pleaded the equitable defense and not the legal one.

In holding that the district court did not abuse its discretion in applying the doctrine of laches under the particular facts of this case, we are not deciding, I take it, whether the notice issued by the EEOC in April of 1974 started the running of a 90–day limitations period that the Plain Dealer could have raised as an affirmative defense in its answer to the complaint.  The answer contains no such defense, so the issue is not before us.

MILBURN, Circuit Judge, dissenting.

Because I believe section 706(f)(1) of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e–5(f)(1), and the policies it reflects preclude invocation of the equitable doctrine of laches where the charging party elects to await completion of the EEOC's processing of the charge and issuance of a right-to-sue notice prior to filing suit, and because I believe

---

1.  Subject to rebuttal, the laches period should presumptively be the same 90 day period as provided for in the statute.  *See Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362 (6th Cir. 1985), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986).

1.  *Cf. New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 65 n. 5, 100 S.Ct. 2024, 2031 n. 5, 64 L.Ed.2d 723 (1980): "As we read the statute, the Commission was *required* to issue that letter after 180 days...." (emphasis supplied).

that a proper application of the doctrine of laches in the present case would not bar plaintiff's claim, I must respectfully dissent.

## I.

Where, as here, an action arises under a statute enacted by Congress, the doctrine of separation of powers requires that courts be "circumspect in adopting principles of equity," including the doctrine of laches, in order not to "risk frustrating the will of the Legislature." *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 105 S.Ct. 1245, 1266 & n. 12, 84 L.Ed.2d 169 (1985) (Stevens, J., dissenting); *see also id.* 105 S.Ct. at 1257 ("as Justice STEVENS properly recognizes, . . . application of the equitable defense of laches in an action at law would be novel indeed."); *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311–20, 102 S.Ct. 1798, 1802–07, 72 L.Ed.2d 91 (1982); *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 193–95, 98 S.Ct. 2279, 2301–02, 57 L.Ed.2d 117 (1978). "While '[i]t is emphatically the province and duty of the judicial department to say what the law is,' . . . it is equally—and emphatically —the exclusive province of the Congress not only to formulate legislative policies and mandate programs and projects, but also to establish their relative priority for the Nation." *Hill*, 437 U.S. at 194, 98 S.Ct. at 2301–02 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803)). Courts may not invoke the doctrine of laches where to do so would be inconsistent with national policies and priorities established by Congress. *See County of Oneida*, 105 S.Ct. at 1257 n. 16; *cf. Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977) ("State [statute of] limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute."). However, the majority's invocation of the doctrine of laches violates both the literal language of section 706(f)(1) and the " 'federal policy

requiring employment discrimination claims to be . . ., whenever possible, administratively resolved before suit is brought in federal court.' " *Kamberos v. GTE Automatic Electric, Inc.*, 454 U.S. 1060, 1063, 102 S.Ct. 612, 614, 70 L.Ed.2d 599 (1981) (White, J., dissenting from denial of certiorari) (quoting *Occidental Life Insurance*, 432 U.S. at 368, 97 S.Ct. at 2455).

Section 706(f)(1) expresses "the decision of Congress to delay judicial action while the EEOC performs its administrative responsibilities." [1] *Occidental Life Insurance*, 432 U.S. at 368, 97 S.Ct. at 2455. Section 706(f)(1) provides, in relevant part:

> If a charge filed with the [EEOC] . . . is dismissed . . . or if within one hundred and eighty days from the filing of such charge . . . the [EEOC] has not filed a civil action . . ., or . . . entered into a conciliation agreement . . ., the [EEOC] shall so notify the person aggrieved and within ninety days . . . a civil action may be brought . . . by the person claiming to be aggrieved. . . .

Regulations promulgated by the EEOC provide that the charging party may request a right-to-sue notice after 180 days from the filing of the charge, *see* 29 C.F.R. § 1601.28(a), but nothing in section 706(f)(1) or the regulations require that a request be made within a certain time or at all. *Kamberos*, 454 U.S. at 1061, 102 S.Ct. at 612 (White, J., dissenting). While Congress permitted the charging party to elect to circumvent lengthy EEOC proceedings, Congress expressly intended that recourse to a civil action would "be the exception and not the rule, and that the vast majority of complaints [would] be handled through the offices of the [EEOC]." 118 Cong.Rec. 7563, 7565 (1972) (Conference Report on H.R. 1746, the Equal Employment Opportunity Act of 1972).

Section 706(f)(1) provides "only an alternative method for a plaintiff to obtain relief from discrimination" and the charging party "cannot be penalized for choosing to forego this alternative and electing instead

---

1. The district court's opinion does not contain any discussion of section 706(f)(1) and the poli-

cies it reflects.

the legislatively and judicially favored method of relying on the administrative processes of the EEOC." *Bernard v. Gulf Oil Co.*, 596 F.2d 1249, 1257 (5th Cir. 1979);[2] *see also Brown v. Continental Can Co.*, 765 F.2d 810, 815 (9th Cir.1985) ("EEOC delays are not to be charged against private plaintiffs and ... complainants are not required to terminate the administrative process by requesting a notice of right-to-sue."); *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1532–33 (11th Cir.1984) (quoting *Bernard*, 596 F.2d at 1257) (footnote omitted) (" '[T]he private remedy allowed by [section 706(f)(1)] is only an alternative method to obtain relief from discrimination. A plaintiff cannot be penalized for choosing to forego this alternative and electing instead the legislatively and judicially favored method of relying on the administrative processes of the EEOC.' "); *cf. Holsey v. Armour & Co.*, 743 F.2d 199, 211 (4th Cir.1984) (charging party's "decision to rely on the [EEOC's] administrative process before initiating a private suit is not inexcusable delay."), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985); *Rozen v. District of Columbia*, 702 F.2d 1202, 1204 (D.C.Cir. 1983) (per curiam) (charging party not penalized where EEOC delayed issuance of right-to-sue notice for twenty-one months after reasonable cause determination). *See generally* 4 A. Larson & K. Larson, *Employment Discrimination* § 48.32(c)(3), at 9A–153–54 (1985) ("As long as there remains enough evidence to proceed to trial, a potentially meritorious claim should not be barred because the EEOC delayed in concluding its proceedings."). Plaintiff's "failure to file [its] Title VII claim until completion of the EEOC process was not inexcusable delay and cannot support the application of laches." *Howard*, 726 F.2d at 1533.

The literal language of section 706(f)(1) leads inexorably to the conclusion that after 180 days have elapsed "the [charging party] may either file a private action within 90 days after EEOC notification or continue to leave the ultimate resolution of his charge to the efforts of the EEOC." *Occidental Life Insurance*, 432 U.S. at 361, 97 S.Ct. at 2452. Moreover, the legislative history of section 706(f)(1) evinces that Congress did not intend the charging party's statutory right to await termination of EEOC proceedings to be emasculated by lengthy EEOC delays. Both the House and Senate Reports expressly state that the very purpose of section 706(f)(1) was to give the charging party an *option* to circumvent lengthy EEOC delays resulting from the EEOC's burgeoning work load and insufficient resources. H.R.Rep. No. 238, 92nd Cong., 2d Sess., *reprinted in* 1972 *U.S. Code Cong. & Admin.News* 2137, 2147–48; *Occidental Life Insurance*, 432 U.S. at 364, 97 S.Ct. at 2453 (quoting S.Rep. No. 92–415, p. 23 (1971)).

The EEOC interprets section 706(f)(1) as authorizing the charging party to await the outcome of the EEOC's efforts to resolve the charge prior to filing suit unless the charging party intentionally delays the proceedings. Brief of EEOC as amicus curiae at 10. It is well-settled that courts must show " 'great deference to the interpretation given the statute by the officers or agency charged with its administration.' " *Environmental Protection Agency v. National Crushed Stone Association*, 449 U.S. 64, 83, 101 S.Ct. 295, 307, 66 L.Ed.2d 268 (1980) (quoting *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)). Congress charged the EEOC "with interpreting, administering, and enforcing Title VII," and its "interpretation of Title VII is to be accorded 'great deference.' " *Parr v. Woodmen of the World Life Insurance Co.*, 791 F.2d 888, 892 (11th Cir.1986) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158 (1971)); *see also EEOC v. Shell Oil Co.*, 466 U.S. 54, 79 n. 36, 104 S.Ct. 1621, 1636 n. 36, 80 L.Ed.2d 41 (1984); *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 761, 99 S.Ct. 2066, 2074, 60 L.Ed.2d 609

---

**2.** The Fifth Circuit granted a petition for rehearing en banc on September 27, 1979. *See* 604 F.2d 449 (5th Cir.1979) (en banc per curiam). However, in its subsequent opinion, the court adopted that part of the panel's opinion relied on in this opinion. *See* 619 F.2d 459, 463 (5th Cir.1980) (en banc), *aff'd*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

(1979); *Hale v. Marsh*, 808 F.2d 616, 620–21 (7th Cir.1986); *EEOC v. Texas Industries, Inc.*, 782 F.2d 547, 551 (5th Cir.1986); *Isaac v. Harvard University*, 769 F.2d 817, 826–27 (1st Cir.1985). The EEOC's interpretation of section 706(f)(1) is well-supported by the statute's language and legislative history and should not be rejected by this court.

Section 706(f)(1) not only authorizes the charging party to await completion of the EEOC proceedings prior to filing suit, but also provides that a suit is timely if filed within ninety days after the charging party receives notice of the EEOC's decision not to take action itself. *See, e.g., Ringgold v. National Maintenance Corp.*, 796 F.2d 769, 770 (5th Cir.1986) (per curiam); *Mosel v. Hills Department Store, Inc.*, 789 F.2d 251, 252 (3d Cir.1986) (per curiam); *Soso Liang Lo v. Pan American World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir.1986) (per curiam); *Josiah–Faeduwor v. Communications Satellite Corp.*, 785 F.2d 344, 346 (D.C.Cir.1986) (per curiam); *Norris v. Florida Department of Health & Rehabilitative Services*, 730 F.2d 682 (11th Cir. 1984) (per curiam). Where an action is based upon a statutory right for which Congress has provided a limitations period, laches is not a defense if the action is filed within the applicable limitations period. *See United States v. RePass*, 688 F.2d 154, 158 (2d Cir.1982). "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitations is definitive." *Holmberg v. Armbrecht*, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). Plaintiff's action was filed within the applicable statute of limitations period, and, therefore, laches is not a defense.

## II.

Assuming *arguendo* that section 706(f)(1) does not authorize the charging party to await termination of EEOC proceedings before filing suit, a proper application of the doctrine of laches would permit plaintiff to proceed with its claim. To establish the affirmative defense of laches, a defendant has the burden to show both an inexcusable delay by the plaintiff and prejudice to the defendant. *Gardner v. Panama R.R.*, 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951) (per curiam). Courts that have invoked laches despite the language of and the policies reflected by section 706(f)(1) have found inexcusable delay only where the charging party failed to "monitor" or "show some interest" in the progress of the charge or where "it would [have] appear[ed] to a reasonable person that no administrative resolution [would] be forthcoming" because the EEOC was no longer actively engaged in the administrative process. *Waddell v. Small Tube Products, Inc.*, 799 F.2d 69, 77 (3d Cir. 1986); *Jeffries v. Chicago Transit Authority*, 770 F.2d 676, 682 (7th Cir.1985), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986).[3] Neither of these criteria is satisfied in the present case.

The court in *Jeffries* declined to decide whether the charging party must "necessarily demand" a right-to-sue notice, but instead held that the plaintiff's failure to demonstrate "some interest" in prosecuting his claim supported a finding of inexcusable delay. The plaintiff in *Jeffries* filed his charge of discrimination in November 1974, but initiated no further contact with the EEOC until January 1984, when the EEOC issued the right-to-sue notice. The court concluded that the plaintiff "should at least have reached the agency" and that the plaintiff's failure to write or call the EEOC for at least nine years was inexcusable. 770 F.2d at 680.

The facts of *Jeffries* are in sharp contrast to those of the present case. Two years after filing the charge, plaintiff inquired about the status of the charge and requested that the EEOC proceed with its investigation as soon as possible. Further, plaintiff again contacted the EEOC in July

---

**3.** The Ninth Circuit held in *Boone v. Mechanical Specialties Co.*, 609 F.2d 956, 959 (9th Cir.1979), that the plaintiff's failure to avail himself of his option to request a right-to-sue letter supported a finding of inexcusable delay, but the Ninth Circuit has subsequently refused to follow the reasoning in *Boone*. *Brown v. Continental Can Co.*, 765 F.2d 810, 815 (9th Cir.1985).

of 1979 concerning the status of the charge. Finally, plaintiff contacted the EEOC repeatedly in 1981 concerning the employees covered by the charge and defendant's failure to cooperate with conciliation efforts. Plaintiff's repeated efforts to monitor the progress of its charge clearly demonstrated plaintiff's interest in prosecuting its claim. *See Jeffries,* 770 F.2d at 680; *see also Rozen,* 702 F.2d at 1204; *Gifford v. Atchison, Topeka & Santa Fe Ry.,* 685 F.2d 1149, 1152 (9th Cir.1982).

On the other hand, the court in *Waddell* held that the charging party has an absolute right to await termination of EEOC proceedings unless it would appear to a reasonable person that no administrative resolution would be forthcoming. The court emphasized that "plaintiffs may reasonably delay while the EEOC is actively engaged in the administrative process" and that courts must not "undermine the EEOC's capacity to investigate charges of discrimination … nor undercut congressional policy of favoring reliance by plaintiffs 'on the administrative process of the EEOC.' " 799 F.2d at 77 (citation omitted) (quoting *Bernard,* 596 F.2d at 1257). The court remanded to the district court rather than deciding whether the EEOC's proceedings in the case before it were active.[4]

The court did, however, cite with approval the decision in *Bernard* where the court characterized EEOC proceedings of nine years as both "active" and "continuing." 596 F.2d at 1256. In *Bernard,* the charge was filed in 1967 and a reasonable cause determination was made in 1968. The EEOC then pursued conciliation efforts for seven years until the EEOC informed the plaintiffs that the defendants did not wish to continue conciliation efforts. The plaintiff did not request a right-to-sue notice for more than a year following this notification.

Once the EEOC's investigation began in the present case, it was both "active" and "continuing" until issuance of the right-to-sue notice. Between 1976 and 1980 the EEOC's efforts were directed at securing evidence which defendant refused to provide even in the face of an EEOC subpoena. The EEOC made a reasonable cause determination in 1980 and commenced conciliation efforts which continued until 1982 when the right-to-sue notice was issued.[5]

The prejudice prong of the laches analysis requires a showing that the defendant's chances of success have been diminished by loss of evidence or unavailability of witnesses. *Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d 838, 844 (D.C.Cir. 1982); *Bernard,* 596 F.2d at 1257. The fact that defendant destroyed documents and records after receiving notice of the charge will not suffice to establish prejudice since the records were destroyed "in violation of the EEOC regulation that requires an employer against whom a discrimination claim is filed to 'preserve all personnel records relevant to the charge or action until final disposition of the charge or action.' " *Rozen,* 702 F.2d at 1204 (quoting 29 C.F.R. § 1602.14(a) (1977)). "A party cannot assert the defense of laches merely because it has failed to preserve evidence despite knowledge of a pending claim." *Bernard,* 596 F.2d at 1257. *See generally* A. Larson & K. Larson, *supra,* § 48.32(c)(2), at 9A–152.

The fact that certain individuals who had been responsible for personnel matters are no longer employed by defendant is insufficient to establish prejudice because defendant made no showing that these witnesses were unavailable. "The fact that there have been personnel changes or that employees have retired is irrelevant unless those employees are unavailable." *Bernard,* 596 F.2d at 1257; *see also EEOC v. Great Atlantic & Pacific Tea Co.,* 735 F.2d

---

**4.** In the present case, the district court made no inquiry or findings in regard to whether the EEOC's investigation was active.

**5.** The district court made no inquiry about whether a reasonable person in plaintiff's position would have realized that an administrative

resolution would not be forthcoming. The district court inexplicably focused its analysis on whether there was any excuse for the EEOC's delay. Whether the EEOC's delay was justified is wholly irrelevant in determining whether plaintiff's delay was inexcusable.

69, 84 (3d Cir.), *cert. dismissed,* 469 U.S. 925, 105 S.Ct. 307, 83 L.Ed.2d 241 (1984). While defendant did establish that other individuals who had been responsible for personnel matters were deceased, defendant made no showing that these deaths would have prejudiced its case had the records not been destroyed in violation of the EEOC regulation. Any prejudice resulting from the death of these witnesses might have been cured by the records required to be preserved by the EEOC regulation. *See Gull Airborne Instruments,* 694 F.2d at 845; *Bernard,* 596 F.2d at 1257.

Defendant's assertion of laches is precluded not only by its failure to establish prejudice and inexcusable delay, but also because the delay in the present case was caused in substantial part by defendant's refusal to cooperate with the EEOC. "If the party which advances the defense of laches is responsible for the delay or contributes substantially to it he cannot take advantage of it." *Potash Co. v. International Minerals & Chemical Corp.,* 213 F.2d 153, 155 (10th Cir.1954); *see also Covelo Indian Community v. Watt,* 551 F.Supp. 366, 381 n. 12 (D.D.C.1982). "A court of equity should not ... permit a defendant to assert a laches defense ... where that same defendant was in some degree responsible for the lapse of time at issue." *Gruca v. United States Steel Corp.,* 360 F.Supp. 38, 47 (E.D.Pa.1973), *rev'd on other grounds,* 495 F.2d 1252 (3d Cir.1974).

More than three years of the delay in the present case was caused by defendant's refusal to produce records voluntarily and to comply with an EEOC subpoena. Defendant urges that we ignore this fact because it had a legal right to refuse to comply with the EEOC subpoena. However, the right to challenge an EEOC subpoena is limited to the assertion that the evidence subpoenaed is not relevant to any matter under investigation or that the subpoena does not describe with sufficient particularity the evidence to be produced. 42 U.S.C. § 2000e–9; 29 U.S.C. § 161(1). Defendant's challenge to the subpoena was based on its belief that the EEOC had waited too long in commencing its investigation. This is not a sufficient basis to refuse compliance with an EEOC subpoena.

### III.

Accordingly, I would REVERSE the district court's entry of summary judgment and REMAND for further proceedings.

KEITH, Circuit Judge, dissenting.

I concur in Judge Milburn's thoughtful dissenting opinion, and write separately only to stress two points of particular concern. First, even if one were to concede that the doctrine of laches could be applied in such a situation, it is inconceivable to me that any court could conclude that the behavior of this defendant would not preclude the exercise of the court's equitable power on its behalf. When, as in the present case, the prevailing party on appeal destroys relevant records despite having received notice of a pending claim, and baldly refuses to comply with an EEOC subpoena while citing spurious grounds for its refusal, it is not only unjustifiable but unconscionable for a court to aid the party's contempt for the administrative process through the granting of equitable relief.

Furthermore, it strikes me as ironic that plaintiff is being penalized for fully exhausting its administrative remedies—pursuant to a complex and comprehensive statutory scheme—rather than resorting to the courts for relief, while this Court, as well as the courts of most other jurisdictions, have been consistently unsympathetic to plaintiffs who seek judicial relief prior to exhaustion even as a reaction to demonstrably lengthy and time-consuming administrative procedures. Indeed, the requirement that one exhaust all administrative remedies has been intoned with such frequency, despite the hardship for plaintiffs which can result, as to have become liturgically axiomatic. Although I am not so naive as to anticipate that this will be the case, I would hope that the delay that the exhaustion requirement creates in some cases would be recognized as prejudicial to future plaintiffs as well as defendants, and

that the majority might someday view the shield it provides today as a sword as well.

NATHANIEL R. JONES, Circuit Judge, dissenting.

While I wholeheartedly agree with the compelling dissenting opinion of Judge Milburn, I add this separate point of emphasis.

The 1972 Amendments to the Title VII of the 1964 Civil Rights Act "represents in some respects a compromise from the original proposals. However, the final product provides the Equal Employment Opportunities Commission ... the tools needed to implement an effective enforcement program to secure equal employment opportunity for all our citizens." Senate Subcommittee on Labor of the Committee on Labor and Public Welfare, 92d Cong., 2d Sess., Legislative History of the Equal Employment Opportunity Act, Forward (Comm. Print 922).

The legislative history of these amendments makes clear that Congress wanted to be certain that bona fide claims would not be lost on mere technicalities involving filing deadlines or because of a lack of diligence or discernment on the part of the agencies, including the EEOC, designated to enforce the law. Speaking of the 1972 Amendments' changes in the filing time requirements, Senator Harrison Williams, and Senator Jacob Javits, after noting that aggrieved persons are often lay persons, said:

> [W]ide latitude should be given individuals in such cases to avoid any prejudice to their rights as a result of government inadvertence, delay or error.

118 Cong.Rec. 1846 (daily ed. Feb. 14, 1972).

The majority opinion can have the likely effect of forcing into already overcrowded courts complaints initially filed and referred to the agency for conciliation efforts. This is what Congress was seeking to avoid through the compromise. Senator Roman Hruska was particularly concerned at the possibility of employers being required to fend off lawsuits before a number of separate forums. In response, Senators Williams and Javits declared that: "[i]t

is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of [the] EEOC or the Attorney General, as appropriate. However, as the individual's rights are paramount under provision of Title VII it is necessary that all avenues be left open for quick and effective relief." 118 Cong. Rec. 3462 (daily ed. Mar. 6, 1972).

With these amendments the jurisdiction of Title VII was expanded to embrace complaints of discrimination in federal, state and local government employment as well as gender discrimination. EEOC Act, 42 U.S.C. § 2000e et seq. (Supp. II 1972); 42 U.S.C. § 2000e–5 (Supp. II 1972). This expanded jurisdiction opened a floodgate of complaints of discrimination in that the public awareness of the remedy was heightened. This avalanche of cases was piled atop the caseload in 1972 that numbered 16,348, whereas the Commission was able to complete investigation of only 5,090 of them. See 188 Cong.Rec. 1650 (daily ed. Feb. 14, 1972). In my view, the majority opinion penalizes victims of discrimination for the pervasiveness of discrimination.

I conclude by noting this deep irony: the aggrieved filed their complaints with the EEOC in a timely manner. By engrafting a laches defense onto the statute this court majority is doing the opposite of what Congress intended. Therefore, I must and do dissent.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge, concurring specially in Circuit Judge MILBURN's dissent.

In my view of this case the majority opinion simply amends the statute to provide a time limitation not adopted by Congress and not justified in equity. Here defendant Plain Dealer had received notice to "preserve all personnel records relevant to the charge or action until final disposition of the charge or action." Thus the Plain Dealer Publishing Company clearly had notice of the pending claim but in spite thereof proceeded to destroy essential records. Since in this case we sit in equity

we should not permit a defendant who refused to produce records voluntarily or comply with an EEOC subpoena to prevail.