865 F.2d 1267
 49 Fair Empl.Prac.Cas. 656
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
NATIONAL CITY BANK, Defendant-Appellee.
 No. 87-3887.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1988.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and ROBERT M. McRAE, District Judge.*
 PER CURIAM.
 
 
 1
 The United States Equal Employment Opportunity Commission issued a subpoena duces tecum to National City Bank of Cleveland. The bank refused to comply with the subpoena, and EEOC sought enforcement in the district court. Applying the doctrine of laches, the district court denied the relief sought. Partial compliance with the subpoena would appear to have been possible without any undue hardship to the bank, however, and we think the bank ought to have been required to comply to that extent, at least.
 
 
 2
 * In 1978 a group called Cleveland Women Working complained to the United States Department of Labor's Office of Federal Contract Compliance Programs that National City Bank was discriminating against women and members of minority groups in its employment practices. OFCCP undertook an on-site review of the bank's employment practices, examining thousands of records and interviewing many witnesses. On May 20, 1979, the agency issued an administrative complaint against the bank alleging discriminatory employment practices going back to 1967. The "Cleveland Women" group intervened in the administrative proceeding and participated in discovery proceedings that continued after the filing of the complaint.
 
 
 3
 On July 20, 1979, Cleveland Women filed an employment discrimination complaint against the bank with the United States Equal Employment Opportunity Commission. EEOC apparently conducted no investigation of its own and did not participate in the discovery that was being conducted by OFCCP.
 
 
 4
 In January of 1981 EEOC and OFCCP signed a memorandum of understanding designed to eliminate duplication of effort in the investigation and prosecution of employment discrimination claims. The memorandum provided that each agency would permit the other to inspect and copy documents in its files.
 
 
 5
 In February of 1981 OFCCP offered EEOC access to the data collected in the investigation of National City Bank. By this time OFCCP had reviewed more than one million documents and had copied more than 100,000 of them. EEOC does not seem to have followed up on OFCCP's offer.
 
 
 6
 On February 1, 1982, the proceeding initiated by OFCCP was settled. EEOC thereupon wrote to the Department of Labor indicating that it still intended to pursue the charge of discrimination against the bank; in this connection, EEOC asked for access to information that OFCCP had obtained from the bank in the course of the investigation.
 
 
 7
 OFCCP denied the request for two reasons. First, the settlement with the bank committed the agency not to release such information. Second, OFCCP wanted to retain control of the information pending resolution of an objection to the settlement that had been lodged by Cleveland Women.
 
 
 8
 On March 1, 1982, an administrative law judge in the Department of Labor concluded that Cleveland Women had no basis for challenging the settlement. The ALJ's decision was later affirmed by the Secretary of Labor.
 
 
 9
 On May 18, 1982, EEOC notified the bank of its intention to proceed with its investigation notwithstanding the settlement. On June 8, 1983, almost four years after Cleveland Women had filed their complaint with EEOC, that agency served its first information request on the bank. The bank refused the request. EEOC thereupon served the bank with a subpoena covering 27 specified categories of information relating to the bank's employment practices during the years 1977 to 1983.
 
 
 10
 On August 26, 1983, the bank sought administrative review of the subpoena under EEOC's internal review procedures. The subpoena was approved at the first level of review on March 16, 1984. The bank then appealed to the second level of review. The subpoena was upheld there some two years later, and on May 1, 1986, the bank complied voluntarily with part of the subpoena.
 
 
 11
 After reviewing the documents supplied by the bank, EEOC served an amended subpoena seeking information in 11 of the 27 categories covered by the original subpoena. The bank refused to comply. EEOC then applied to the district court for an order to show cause why the subpoena should not be enforced. The district court denied the application, and this appeal followed.
 
 II
 
 12
 The elements of the equitable doctrine of laches are well established:
 
 
 13
 "(1) lack of diligence by the party against whom the defense is asserted, and
 
 
 14
 (2) prejudice to the party asserting the defense."
 
 
 15
 Cleveland Newspaper Guild v. Plain Dealer Publishing Co., 839 F.2d 1147, 1153 (6th Cir.1988) (en banc), cert. denied, --- U.S. ----, 57 U.S.L.W. 3254 (1988) (quoting Costello v. United States, 365 U.S. 265, 282 (1961)). It is now settled, in this circuit, that where these elements have been established, the doctrine of laches may be applied in cases arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, the statute under which EEOC is conducting its investigation of National City Bank. Cleveland Newspaper Guild, supra.
 
 
 16
 Although application of the doctrine of laches has been denied, for one reason or another, in a number of EEOC subpoena enforcement cases, see, e.g., EEOC v. Bethlehem Steel Corp., 765 F.2d 427, 430 (4th Cir.1985) (no showing that passage of time had contributed to administrative burden of making requested materials available to EEOC); EEOC v. South Carolina National Bank, 562 F.2d 329, 332 (4th Cir.1977) ("generalized allegations of irreparable harm from the passage of time" insufficient to establish prejudice); EEOC v. Exchange Security Bank, 529 F.2d 1214, 1216-17 (5th Cir.1976) (no evidence of dilatory attitude, "slothfulness, lethargy, inertia, or caprice" to support claim that delay was unreasonable), we see no reason why the doctrine may not be applied in the subpoena enforcement context where both elements of the doctrine have been established. We therefore turn to the question whether those elements have been established here.
 
 
 17
 * Lack of diligence means unreasonable delay, and the district court found two periods of unreasonable delay in this case. The first started with the filing of the initial complaint against the bank and ran until June 8, 1983. For nearly four years, EEOC made virtually no effort to acquire any information about the claimed acts of discrimination. The second period of unreasonable delay was found to have run from August 26, 1983, to February 12, 1986, during which time the bank's appeal of the validity of the EEOC subpoena languished within the agency.
 
 
 18
 From the date on which the original complaint was filed in 1979, EEOC had the statutory power to investigate and to subpoena information. EEOC also had access to OFCCP's voluminous files on National City Bank's employment practices, but failed to do anything about it until after OFCCP had concluded the settlement agreement that shut such access off.
 
 
 19
 EEOC argues that its delay was "reasonable" because it was sensible for EEOC to hold its investigation in abeyance until OFCCP's investigation had been concluded. As the district court noted, however, "common sense undermines" this argument:
 
 
 20
 "[I]f as the EEOC contends it planned from the beginning to duplicate the investigation of the OFCCP, it would have been more sensible, or more correctly less unreasonable, to have done so while the OFCCP was investigating, rather than wait for the OFCCP to finish investigating and then to begin its own. Simultaneous investigation would have allowed coordination among the EEOC, the OFCCP, and NCB [the bank] and could have minimized duplication."
 
 
 21
 EEOC makes no effort to justify the second delay, arguing only that the bank was somehow at fault for exercising its right to seek review of the subpoena. But this court has rejected the notion that a party invoking EEOC's internal administrative review procedures has "unclean hands" foreclosing application of the doctrine of laches. See Cleveland Newspaper Guild, 839 F.2d at 1154-55.
 
 
 22
 In Exchange Security Bank, 529 F.2d at 1216-19, there was an 18-month delay between the institution of the EEOC charge and the initial EEOC request for documents; here there was a 47-month delay. In Exchange Security Bank there was a four-month delay in obtaining a subpoena (compared to a one-month delay in the instant case), a one-month delay while the subpoena was challenged through administrative proceedings (compared to a 29-month delay in the instant case), and a further 18-month delay before a court order enforcing the subpoena was sought (compared to a 10-month delay in the instant case). On balance, the delays in this case are substantially more egregious than those in Exchange Security Bank, and we think the district court's finding of unreasonableness is supported by the evidence.
 
 B
 
 23
 The district court identified three possible sources of prejudice from EEOC's dilatory conduct. First, the court found that the delays made the burden of compliance with the subpoena much greater than it otherwise would have been. Second, the court found that the bank had been prejudiced by the increased costs that would have to be incurred in defending itself against any EEOC charges. Third, the court noted that the bank's potential exposure to large backpay awards had been enormously increased by EEOC's delay.
 
 
 24
 Much of what EEOC is seeking consists of documents obtained from the bank by OFCCP during that agency's investigation of the bank's employment practices. When OFCCP and the bank concluded their settlement, these documents (which we shall call the "OFCCP documents") were returned to the bank. EEOC promptly informed the bank by letter that it expected the bank to continue to maintain the OFCCP documents. At oral argument, counsel for the bank conceded that it would be "relatively painless" to produce the OFCCP documents in compliance with the subpoena. The rule that ought to have governed this situation, we think, is "no pain, no prejudice."
 
 
 25
 With respect to other information sought in the EEOC subpoena, the situation is more complex. The bank argues that the subpoena calls for information that can be provided only by painstaking review of thousands of personnel files and extraction of specific bits of information from each one. Because of employee turnover, the burden of conducting this review is said to be greater now than it would have been in the past. With respect to the ad testificandum portion of the subpoena, similarly, the bank argues that turnover in the ranks of the people who make hiring and firing decisions renders compliance much more burdensome now than it would have been seven or ten years ago. Locating the individuals who made the decisions involved and reconstructing the circumstances surrounding those decisions may well impose a substantial burden.
 
 
 26
 We are not prepared to say at this juncture that the district court's finding of prejudice with respect to documents and evidence other than the OFCCP documents represented an abuse of discretion. The OFCCP documents may prove to contain much or all of what EEOC needs to complete its investigation, in which event enforcement of the subpoena with respect to less readily accessible documents and with respect to testimony by former bank officers would be not only a burden, but an unnecessary burden.
 
 
 27
 Under the circumstances, it seems to us that only production of the OFCCP documents ought to be compelled at this point. EEOC may prepare a new, more narrowly drafted subpoena if review of the OFCCP documents reveals a need therefor; whether compliance with such a new subpoena would "unduly prejudice" the bank can be decided if and when that question arises. Similarly, whether EEOC's delays would prejudice the bank in litigating any charges that EEOC may file hereafter is something that can best be decided if and when that question actually arises.
 
 
 28
 The case is REMANDED to the district court for entry of an appropriate order.
 
 
 
 *
 The Honorable Robert M. McRae, United States District Court for the Western District of Tennessee, sitting by designation