**Ved S. KAWATRA, Plaintiff,**

v.

**MEDGAR EVERS COLLEGE OF THE CITY UNIVERSITY OF NEW YORK, The Board of Higher Education, Richard D. Trent and Wendell Clement, Defendants.**

No. CV 86–1946.

United States District Court,
E.D. New York.

Nov. 17, 1988.

Gary Farrell, Burke, Burke & Burke, New York City, for plaintiff.

Peter Zimroth, Corp. Counsel of City of New York, New York City (Sarah Scott, of counsel), for defendants.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

This matter is before the Court on Defendants' motion for summary judgment. For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff, an Indian woman, was employed as an Assistant Professor in the Division of Social Science at Medgar Evers College (the "College") from 1973 through the spring semester of 1978. In October of 1977, the College informed plaintiff that she would not be reappointed for the 1978–79 academic year. That decision by the College effectively denied plaintiff tenure. Displeased with the College's decision, plaintiff requested a statement of reasons for the denial of tenure. Responding to that request, Richard D. Trent, then-President of the College, explained as follows in a letter dated December 5, 1977:

I have reviewed the long-range faculty needs in the Social Sciences and the College, as well as the projected student enrollment and anticipated fiscal resources for 1978–79. In addition, I have concluded that the College's curriculum changes in the liberal arts and sciences effective with the 1977 Fall term require a faculty suitable to the new curriculum. In light of the faculty needs, curriculum changes, projected enrollment and antici-

pated fiscal resources, it is my judgment that the Division of Social Sciences needs a faculty member with a PhD [sic] in Sociology and a record of research and scholarly writing in sociology. Prior to my decision, I reviewed your record carefully. You do not meet these criteria.

Scott Affidavit, Exhibit 1. On December 8, 1977, plaintiff filed a grievance against the College. While that grievance was pending, plaintiff also filed, on July 28, 1978, a charge of discrimination with the State Division of Human Rights ("SDHR"), alleging discrimination based on sex and national origin. Shortly after receiving a copy of plaintiff's claim made in the SDHR, the Equal Employment Opportunity Commission ("EEOC") informed plaintiff by letter dated September 8, 1978 that her SDHR complaint could be transferred to the EEOC after the SDHR had had sixty days to resolve it.

After proceeding unsuccessfully through the first two steps of the faculty grievance process, plaintiff, who was represented throughout by the Professional Staff Congress ("PSC"), the staff union, prepared to arbitrate her claim. Shortly before the presentation of evidence, however, plaintiff and defendants entered into a settlement agreement. That agreement read as follows:

1. The PSC hereby withdraws with prejudice the grievance of Ved Kawatra heard at Step Three on February 27 and April 30, 1980 as of the date of this agreement.

2. This agreement constitutes the settlement of all claims by the PSC and Ved Kawatra relating to the University's failure to reappoint her at Medgar Evers College for the 1978–79 academic year with tenure.

3. The PSC and Kawatra agree that no further grievances, administrative proceedings or court actions or proceedings either within or outside Medgar Evers College or The City University of New York will be initiated by or on behalf of Kawatra relating to her employment prior to the date of this agreement.

4. the parties shall submit this dispute to a select faculty committee which shall be established by a procedure parallel to that found at Section 20.5(c) of the Agreement between the board of Higher Education and the professional Staff Congress/CUNY [City University of New York], 1977–78.

5. This settlement shall not constitute a precedent for other grievances or arbitrations.

In settling her grievance and obtaining the right to have her claim submitted to a faculty committee, plaintiff received, according to defendants, all the relief she could have received had she won her arbitration, as the arbitrator was empowered only to recommend review by a faculty committee and could not award relief that superceded President Trent's earlier decision. Scott Affidavit, at 5. Defendants point out that this right was an important one, because plaintiff's grievance proceeding would have been terminated had she lost in the arbitration proceeding. In exchange for the benefits received in the settlement, plaintiff gave up her right to initiate further "court actions." Defendants assert that they sought this relinquishment because there was pending at that time a class action against the City University of New York entitled *Melani v. Board of Higher Education of the City of New York,* 73 Civ. 5434 (LPG), in which plaintiff could join, and defendants wanted to avoid "multiplicitous litigation." *Id.* The parties agree that the settlement agreement did not affect plaintiff's charge then pending before the SDHR and the EEOC.

On October 22, 1981, the SDHR informed plaintiff that her claim was still pending and requested plaintiff to contact her Field Representative in order to update her allegations. In response to this, plaintiff's lawyer at the time, Alice Ryan, wrote to SDHR and forwarded a copy of the faculty committee's recommendation of reappointment with tenure. On November 21, 1983, after two years of inactivity regarding plaintiff's claim, the District Director of the EEOC ordered plaintiff's file closed due to the EEOC's inability to locate her. Upon receiving notice that her file was closed, plaintiff contacted the EEOC requesting opening of her file and informing the EEOC that she had changed addresses. In response, the EEOC reactivated plaintiff's file.

On March 30, 1984, the SDHR issued its determination on plaintiff's discrimination claim, finding that there existed no probable cause to believe that the denial of tenure was discriminatory. The SDHR based its finding on the fact that plaintiff lacked a doctoral degree in the discipline the college needed. Scott Affidavit, Exhibit 8.

In December of 1984, the EEOC contacted plaintiff and informed her that she could request a right to sue letter from the Justice Department. On May 22, 1985, the EEOC contacted plaintiff again and requested information regarding her claim. On November 4, 1985, after receiving several adjournments of the date by which the information was to be supplied, plaintiff supplied to the EEOC the information regarding her claim. In supplying that information plaintiff alleged, in addition to her original claims of discrimination based on sex and national origin, that she was discriminated against based on her marital status. Specifically, plaintiff alleged that she was denied tenure because of President Trent's displeasure with the conduct of plaintiff's husband in connection with a different discrimination claim that had been leveled against the College. After supplying this information, plaintiff requested, and the EEOC granted, permission to supply further information regarding her claims.

Shortly thereafter, plaintiff, apparently disinclined to supply any further information or await the completion of the EEOC investigation, requested a right to sue letter. On February 10, 1986, the EEOC acknowledged plaintiff's request and informed plaintiff that the request was forwarded to the Justice Department. On March 10, 1986, the Justice Department notified the plaintiff of her right to sue. Plaintiff then timely commenced this action, alleging discrimination based on sex, national origin, and marital status.

In response to the complaint, defendants moved to dismiss, contending (1) that this action is barred by the terms of the 1980 settlement agreement; (2) that this action is barred by the doctrine of laches; and (3) that plaintiff's marital status claim is barred because it was not presented with plaintiff's original EEOC charges. At the oral argument of the motion, the parties agreed that the first two arguments were fact-intensive and thus more appropriate in a summary judgment posture following limited discovery. After discovery on those issues and additional briefing, the motion is ready for resolution.

■ Defendants argue first that this action is barred by the terms of the 1980 settlement agreement. Defendants contend that plaintiff's agreement not to initiate any further court actions based on her denial of tenure constitutes a voluntary and knowing waiver of her rights. Plaintiff argues in response that there was no knowing and voluntary waiver because she believed that, since the settlement agreement did not affect her SDHR and EEOC complaints, she could continue to pursue her EEOC claim in federal court. Plaintiff argues further that her rights were not waived because her Title VII action is a continuation of her SDHR and EEOC complaints and not a new action.

In *Alexander v. Gardner–Denver Company*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court held that an employee did not waive Title VII rights by initially submitting a discrimination claim to arbitration pursuant to a collective bargaining agreement. The Court recognized, however, that it is possible for an employee to waive a cause of action under Title VII pursuant to a voluntary settlement. *Id.* at 52, 94 S.Ct. at 1021. In holding that there was no waiver in *Alexander*, the Court observed that there was no settlement agreement "expressly conditioned on a waiver of the employee's cause of action under Title VII." In addition, the Court cautioned that "[i]n determining the effectiveness of any such waiver, a court would have to determine at the outset that

the employee's consent was voluntary and knowing." *Id.* n. 15.

In considering whether a waiver of Title VII rights is knowing and voluntary, courts have looked to general principles of contract construction such as clarity and lack of ambiguity of the settlement agreement and the absence of undue influence. *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir.1988) (citing *Pilon v. University of Minnesota*, 710 F.2d 466 (8th Cir.1983), and *Rogers v. General Electric Co.*, 781 F.2d 452 (5th Cir.1986)). Another factor is whether the employee was represented by or consulted with an attorney. *See E.E.O. C. v. American Express Pub. Corp.*, 681 F.Supp. 216, 219 (S.D.N.Y.1988) (Lasker, J.). *See also id.* (listing various other factors to consider in determining voluntariness of releases). Courts have also noted that waivers of rights under Title VII are "not to be 'lightly inferred,'" *Rogers v. General Elec. Co.*, 781 F.2d at 455 (citing *Watkins v. Scott Paper Co.*, 530 F.2d 1159, 1172 (5th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 139 (1976)), and that "federal law governs all questions relating to the validity of and defenses to purported releases of federal statutory causes of action." *Locafrance U.S. Corp. v. Intermodal Systems Leas.*, 558 F.2d 1113, 1115 (2d Cir.1977); *see Rogers v. General Elec. Co.*, 781 F.2d at 454–55.

Application of the foregoing factors leads this Court to conclude that plaintiff did not knowingly waive her right to institute this action. Although the settlement agreement does state that plaintiff relinquished the right to initiate any *further* suits, the agreement did not explicitly address whether plaintiff was precluded from continuing her then-pending SDHR and EEOC complaints in a judicial rather than administrative forum. In light of the parties' understanding that the settlement did not effect the SDHR and EEOC complaints, it is entirely likely that, as she argues, plaintiff understood the settlement to mean that she would be able to pursue her administrative claims in federal court. This conclusion is buttressed by the fact that plaintiff was not represented by counsel at the time and thus did not appreciate

that a Title VII claim in federal court might be deemed a "further suit" within the terms of the settlement agreement.

The Court is not unmindful that plaintiff, a highly educated woman, signed the settlement agreement. However, in the apt words of Judge Wisdom, "[t]o assume that, notwithstanding strong evidence to the contrary, a signature implies understanding is to allow a rule of contract law to play too salient a part in the administration of a remedial civil rights statute." *Watkins v. Scott Paper Co.*, 530 F.2d at 1172. If the defendants wanted to make sure that the settlement agreement would bar any lawsuit growing out of the then-pending administrative proceedings, they could have made that crystal clear in the agreement. They did not. Accordingly, no such waiver will be inferred.

Defendants contend next that plaintiff's action is barred on the ground of laches. They assert that plaintiff unreasonably delayed the SDHR and EEOC proceedings and that they have suffered prejudice from that delay. Plaintiff admits that she tarried somewhat in exhausting her administrative remedies but contends that not all of the delay in those proceedings was attributable to her inaction. Plaintiff contends further that defendants have not adequately demonstrated prejudice and thus laches is inapplicable.

Although the Supreme Court and our Court of Appeals have not addressed the precise issue,[1] several circuit courts have recognized that a federal court may dismiss a Title VII action on the ground of laches due to inordinate delay in the administrative proceedings. *See, e.g., Cleveland Newspaper Guild v. Plain Dealer Pub.*

*Co.*, 839 F.2d 1147 (6th Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 245, 102 L.Ed.2d 234 (1988); *Whitfield v. Anheuser–Busch, Inc.*, 820 F.2d 243 (8th Cir.1987); *Waddell v. Small Tube Products Inc.*, 799 F.2d 69 (3d Cir.1986); *Jeffries v. Chicago Transit Authority*, 770 F.2d 676 (7th Cir.1985), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986); *Howard v. Roadway Exp., Inc.*, 726 F.2d 1529 (11th Cir. 1984); *Rozen v. District of Columbia*, 702 F.2d 1202 (D.C.Cir.1983); *Boone v. Mechanical Specialties Co.*, 609 F.2d 956 (9th Cir.1979); *Bernard v. Gulf Oil Co.*, 596 F.2d 1249 (5th Cir.1979), *rev'd on other grounds*, 619 F.2d 459 (1980), *aff'd*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Despite recognizing that the doctrine may apply, the district courts in this circuit have shown understandable reluctance to dismiss Title VII suits on the ground of laches. *See, e.g., Tunis v. Corning Glass Works*, 698 F.Supp. 452 (S.D. N.Y.1988); *Allen v. Avon Products, Inc.*, 45 Employ. Pract. Dec. (CCH) ¶ 37, 830, at 51,238 (S.D.N.Y. Feb. 22, 1988) (Kram, J.) [1988 WL 18841]; *Cosgrove v. Sears, Roebuck & Co.*, No. 81 Civ. 3482 (CSH), slip op. (S.D.N.Y. May 26, 1982). These latter cases have recognized that "it is not unreasonable *per se* for an aggrieved party to delay filing an action in federal district court pending the outcome of the administrative process. To the contrary, such a party 'should be commended, rather than criticized for attempting to stay out of court.'" *Tunis v. Corning Glass*, 698 F.Supp. at 454 (quoting *Cosgrove v. Sears, Roebuck & Co.*, slip op. at 12.) The reasoning behind these decisions, Judge Carter pointed out, is "premised on the strong federal policy which favors the avoidance of private suits by

---

**1.** In *Albemarle Paper Company v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), the Supreme Court held that a party's delay in raising a claim, coupled with prejudice by the party against whom the claim is asserted, may support a denial of relief on that claim. The Court noted that "[t]o deny [relief] because a *particular* cause has been prosecuted in an eccentric fashion, prejudicial to the other party, does not offend the broad purposes of Title VII." *Id.* at 424, 95 S.Ct. at 2375 (emphasis in original). In *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), the Court recognized that, although the EEOC was not required to commence an enforcement action within 180 days of the filing of a charge, courts may exercise discretion and deny relief if undue delay in bringing suit causes a defendant prejudice. *Id.* at 373, 97 S.Ct. at 2457.

In *Ass'n Against Discrimination v. City of Bridgeport*, 647 F.2d 256, 272 n. 15 (2d Cir.1981), our Court of Appeals assumed without deciding that laches applies in Title VII suits.

encouraging claimants to rely on agency procedures." *Id.* *See Cleveland Newspaper Guild v. Plain Dealer Pub. Co.,* 839 F.2d at 1162 (Keith, J., dissenting) ("it strikes me as ironic that plaintiff is being penalized for fully exhausting its administrative remedies—pursuant to a complex and comprehensive statutory scheme— rather than resorting to the courts for relief, while this Court, as well as the courts of most other jurisdictions, have been consistently unsympathetic to plaintiffs who seek judicial relief prior to exhaustion even as a reaction to demonstrably lengthy and time-consuming administrative procedures").

■ Laches may be invoked as a bar only where there is proof "both that the plaintiff delayed unreasonably in asserting her claim and that the defendant suffered 'substantial' prejudice as a result." *Tunis v. Corning Glass,* slip op. at 2–3. *See Ass'n Against Discrimination v. City of Bridgeport,* 647 F.2d at 272 n. 15. Courts in this Circuit have "placed a strict construction on the element of unreasonable and unexcused delay in the context of Title VII suits." *Tunis v. Corning Glass,* slip op. at 3. Those cases that have upheld dismissals have generally done so only where a plaintiff has utterly failed to oversee or show interest in the progress of the administrative charge, *Whitfield v. Anheuser–Busch, Inc.,* 820 F.2d at 245 (plaintiff failed to check on status of EEOC claim for nearly 10 years); *Jeffries v. Chicago Transit Authority,* 770 F.2d at 680 (plaintiff failed to contact EEOC for nine years); *but see Cleveland Newspaper Guild v. Plain Dealer Pub. Co.,* 839 F.2d at 1154 (upholding dismissal even though much of the delay was attributable to defendant), and where the defendant "has suffered prejudice in the form of lost witnesses and documentary evidence." *Id.; see Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800, 808 n. 17 (8th Cir.1979), *cert. denied,* 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980).

■ Assuming that the defense of laches is applicable to Title VII actions, *but see Cleveland Newspaper Guild v. Plain Dealer Pub. Co.,* 839 F.2d at 1157 (Milburn, J., dissenting) (Title VII and the policies it reflects "preclude invocation of the equitable doctrine of laches where the charging party elects to await completion of the EEOC's processing of the charge"), this Court declines to apply it here. A review of the record as a whole reveals that, although not a model of diligence, plaintiff's conduct cannot be said to be indicative of a complete lack of interest in the progress of her administrative claim. For instance, in 1981, after a three year period of inactivity apparently attributable solely to the SDHR and the EEOC, plaintiff's attorney at that time sent a copy of the faculty committee's recommendation to the SDHR and tried to convince the SDHR to urge the Board of Trustees of the City University to rehire plaintiff. Furthermore, after receiving the notice from the EEOC that her file was closed, plaintiff responded to EEOC and SDHR by informing them of her change of address. Following the SDHR determination plaintiff sought appellate review before the State Human Rights Appeal Board. Plaintiff was later informed, however, that the Appeal Board was being abolished, and thus she could not pursue her appeal in that forum. Thereafter, the EEOC continued its investigation and then requested information from the plaintiff, which plaintiff supplied after several adjournments. In sum, although she was responsible for some delay, plaintiff kept in touch with the administrative agencies on several occasions. Thus, defendants' claim of inexcusable delay by plaintiff must fail.

Furthermore, even if plaintiff's delay were inexcusable, it is far from clear that defendants have made an adequate showing of prejudice. Defendants claim that they are prejudiced because many of the people involved in the decision regarding plaintiff's tenure are no longer employed by the City University. This argument is unavailing, however, because "[t]he fact that there have been personnel changes or that employees have retired is irrelevant unless those employees are unavailable." *Bernard v. Gulf Oil Co.,* 596 F.2d at 1257. The affidavit submitted by the defendants

is insufficient to establish that most of the potential witnesses are unavailable.

Defendants argue further that they have not taken precautions to preserve evidence because they believed that plaintiff waived her right to sue in federal court by the signing of the 1980 settlement agreement. The Court finds this argument astounding in light of the EEOC regulation that mandates the preservation by an employer against whom a discrimination claim is made of "all personnel records relevant to the charge or action until final disposition of the charge or action." 29 C.F.R. § 1602.14(a) (1987). Thus, although defendants may well have believed that the settlement agreement would preclude any further actions, they were still obligated to preserve all of their records until the EEOC charge was disposed of. Accordingly, any prejudice attributable to defendants' failure to preserve records is entirely self-inflicted. *See Rozen v. District of Columbia,* 702 F.2d at 1204; *see also Bernard v. Gulf Oil Co.,* 596 F.2d at 1257 ("A party cannot assert the defense of laches merely because it has failed to preserve evidence despite knowledge of a pending claim"). In sum, defendants' claim of prejudice is unconvincing.

In their final argument, defendants contend that plaintiff's "marital status" claim must be dismissed because that claim was not filed in a timely fashion with the EEOC and because that claim is not reasonably related to plaintiff's original EEOC charge. Plaintiff responds by contending that the claim was made during the EEOC investigation and is thus properly before the Court.

■ A party must, of course, file a timely charge with the EEOC and obtain a right-to-sue letter as a condition precedent to the filing of a Title VII action. 42 U.S.C. § 2000e–5(a), (b). In defining the scope of the judicial claim, however, the Court may look not only the EEOC charge, but may also take into account the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.

1979) (quoting *Smith v. American President Lines,* 571 F.2d 102, 107 n. 10 (2d Cir.1978), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)). *See Bradley v. Consolidated Edison Co. of New York, Inc.,* 657 F.Supp. 197, 202 (S.D. N.Y.1987). Moreover, a court may consider claims that are "reasonably related to the allegations in the complaint filed with the EEOC." *Kirkland v. Buffalo Board of Education,* 622 F.2d 1066, 1068 (2d Cir. 1980). Our Court of Appeals has recognized that judicial claims "can reasonably be expected to grow out of," or are "reasonably related to," the EEOC charge where those judicial claims address the same type of discrimination claim, *see e.g., Almendral v. New York State Office of Mental Health,* 743 F.2d 963, 967 (2d Cir. 1984), or constitute allegations of continuing discrimination. *See, e.g., id.; Kirkland v. Buffalo Board of Education,* 622 F.2d at 1068; *Silver v. Mohasco Corp.,* 602 F.2d at 1090. *See also Staples v. Avis Rent–A–Car System,* 537 F.Supp. 1215, 1218 (W.D. N.Y.1982) ("When one has complained of a particular kind of discrimination in employment, any and all effects and results flowing from *that kind* of discrimination may be sued upon even though a particular effect or result had not earlier been asserted") (emphasis in original).

■ In the case at bar, plaintiff's "marital status" claim is not reasonably related to her other claims because it alleges a wholly different type of discrimination. The only relationship between the claims is temporal proximity, which is clearly insufficient to bring the claims within the "reasonably related" standard. Moreover, because of the close temporal proximity of the claims, plaintiff cannot make an allegation of continuing discrimination. Plaintiff argues, however, that she described the factual basis of her marital status claim in her response to the EEOC's request for information, and thus her claim was actually part of the EEOC investigation. This argument might be persuasive if plaintiff had actually allowed the EEOC to investigate her marital status claim. Plaintiff, however, did not do so. Instead, after raising for the first time her marital status claim and, at the same time, supplying to

the EEOC the factual bases of her other claims, she requested from the EEOC time to submit further information. And then, before supplying that further information or allowing the EEOC time to investigate her new claim, plaintiff requested her right-to-sue letter. If such an approach were deemed sufficient to allow a claimant's supplemental claim to go forward, it would allow that claimant to bypass—and thus defeat—the exhaustion requirement, the purpose of which is "to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Stewart v. United States Immigration and Naturalization Service*, 762 F.2d 193, 198 (2d Cir.1985). Because such an approach is antithetical to the exhaustion requirement—the satisfaction of which is particularly appropriate where, as here, the supplemental claim is unrelated to the original claims—this Court holds that it lacks jurisdiction over plaintiff's marital status claim.

CONCLUSION

Defendants' motion for summary judgment seeking dismissal on the grounds of waiver and laches is denied. Defendants' motion seeking dismissal of plaintiff's marital status claim is granted.

SO ORDERED.