Martin TONE, Plaintiff,

v.

**UNITED STATES POSTAL SERVICE;**
**William J. Henderson, Postmaster**
**General, Defendants.**

No. 98–CV–1035.

United States District Court,
N.D. New York.

Sept. 27, 1999.

Faith A. Seidenberg, Seidenberg & Strunk, Syracuse, NY, for plaintiff.

William F. Larkin, AUSA, Office of the U.S. Atty., Syracuse, NY, Anne M. Gallaudet, phv, U.S. Postal Service, Windsor, CT, for Defendants.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

Currently before this court are plaintiff's motion and defendants' cross-motion for summary judgment. For the reasons that follow below, the court denies plaintiff's motion and grants defendants' cross-motion.

## BACKGROUND

On March 4, 1972, plaintiff was hired by defendants to work in the Motor Vehicle Craft ("MVC") of its Syracuse facility. The MVC consists primarily of motor vehicle operators ("MVO"), tractor trailer operators ("TTO") and their supervisors. With the exception of a pickup truck used for casual work, the vehicles used in the MVC weigh over 14,000 pounds and most weigh over 26,000 pounds. Plaintiff worked as a MVO until June of 1981, when he was promoted to a TTO. In July of 1997, plaintiff's left eye was removed because of a malignant tumor and he was left with monocular vision.

Following his surgery, plaintiff no longer was able to work as a TTO because he could not meet the regulations set forth in Handbook EL–806, Health and Medical Services, which govern drivers of vehicles between 10,000 and 26,000 pounds, or by the Department of Transportation ("DOT"), which establishes medical requirements for drivers of commercial vehicles weighing over 26,000 pounds.[1] Plaintiff requested temporary and permanent light duty assignments in the MVC. Employees who sustain an injury off the job may request a light duty assignment while they are recovering from their injury. Defendants denied plaintiff's requests because his medical condition was permanent and there wasn't enough available light duty work within the MVC to fill an eight-hour day.

On September 18, 1997, plaintiff took the Test Battery # 470 Examination, which is required for applicants who wish to work in a number of specific entry-level positions.[2] Plaintiff failed the test and was

---

1. Section 133.213 of Handbook EL–806, Health and Medical Services, provides as follows:

   For positions requiring the operation of vehicles 10,000 pounds or more, the applicant ... must maintain vision tests at 20/30 (Snellen) in one eye and 20/50 (Snellen) in the other eye, with or without glasses.

   DOT regulations in 49 C.F.R. § 391.41(b)(10) provide as follows:

   A person is physically qualified to drive a commercial motor vehicle if that person—
   . . .
   Has distant visual acuity of at least 20/40 (Snellen) in each eye without corrective lenses or visual acuity separately corrected to 20/40 (Snellen) or better with corrective lenses, distant binocular acuity of at least 20/40 (Snellen) in both eyes with or without corrective lenses, field of vision of at least 70˜in the horizontal Meridian in each eye, and the ability to recognize the colors of traffic signals and devices showing red, green and amber.

   Plaintiff correctly points out that 49 C.F.R. § 390.3(f)(2) exempts defendants from the regulations of § 391.41(b)(10) unless otherwise specified. However, defendants have chosen to incorporate the medical standards set forth by the DOT into their policy, so it is an adequate basis to disqualify plaintiff. See Spaulding Aff. ¶ 7.

2. The Test Battery # 470 Examination on consists of four parts: address matching, address memory, number series and oral di-

deemed ineligible for those positions. Subsequently plaintiff wrote defendants requesting an opportunity to retake the test with an accommodation of more time to complete it. He alleged he failed the test because at the time he was wearing an eye patch and his glasses did not fit properly. Defendants denied his request because the test involves a speed component and to allow additional time would render the test scores meaningless.

Plaintiff also took the Laborer and Custodial Examination. This test is similar in format to the Test Battery # 470 Examination. Plaintiff passed this test and was eligible for entry-level positions in the Maintenance Craft.

On October 10, 1997, plaintiff contacted the Equal Employment Opportunity Complaints Processing Office ("EEOC") and alleged he had been denied a light duty position because of physical disability discrimination. On November 3, 1997, plaintiff filed a formal complaint setting forth his allegations.

Three days later, plaintiff received a notice of proposed separation from defendants. Defendants issued the notice because although his doctor issued him medical clearance to return to work on September 8, 1997, plaintiff, who had been on sick leave since his surgery, had yet to transfer to a craft for which he was qualified. Plaintiff responded by requesting to be placed in the Maintenance Craft as a laborer custodian and his request was granted. This transfer resulted in plaintiff losing his bidding seniority and incurring a cut in pay.

On November 24, 1997, plaintiff contacted the EEOC for the second time. This time he alleged defendants denied him a reasonable accommodation when it denied his request to retake the Test Battery # 470 Examination. Plaintiff theorized defendants discriminated against him be-cause of his disability and in reprisal for the previous contact with the EEOC. Roughly two weeks later, plaintiff contacted the EEOC for the third time. He claimed he received a notice of proposed separation from defendants and, as a result, he was forced to agree to transfer to another craft and take a lower-graded position.

On January 16, 1998, plaintiff filed a formal complaint with the EEOC for the final two allegations. All three of the complaints were consolidated into one case and it was accepted for investigation on February 17, 1998. The EEOC dismissed the consolidated complaint on June 23, 1998.

A week later, plaintiff filed a civil action complaint with this court, which he amended on October 19, 1998. Succinctly, plaintiff claims that defendants discriminated against him in violation of 29 U.S.C. § 701 et seq. and Title VII, 42 U.S.C. § 2000e et seq. by denying him equal employment opportunities and benefits as are enjoyed by other employees, retaliating against him and creating a hostile work environment after he filed a complaint with the EEOC. Defendants oppose plaintiff's claims and argue that plaintiff is not an individual with a disability, was not subject to retaliation and improperly alleged his hostile work environment claim.

## DISCUSSION

### I. Standard for Summary Judgment

The standard for summary judgment is well-settled. Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A motion for summary judgment may be granted when the moving

rections. It is used for a total of six jobs and their variants: Distribution Clerk, City Carrier, Flat Sorting Machine Operator, Automated Markup Clerk, Mailhandler and Mail Processor. The test measures such skills as address memory retention and perceptual speed, and is designed to require quick pattern recognition.

party carries its burden of showing that no triable issues of fact exist. *See Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. *See Id.; United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *See Id.*, at 250–251, 106 S.Ct. at 2511.

On cross-motions for summary judgment, such as in this instance, the standard is the same as that for individual motions for summary judgment. The court must consider each motion independent of the other and, when evaluating each, must consider the facts in the light most favorable to the non-moving party. *See Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993); *Schwabenbauer v. Board of Educ. of Olean*, 667 F.2d 305, 314 (2d Cir.1981).

II.  Claim of Discrimination In Violation of 29 U.S.C. § 701 *et seq.*

█  Plaintiff claims that defendants discriminated against him in violation of 29 U.S.C. § 701 *et seq.* The Rehabilitation Act of 1973 ("Act"), 29 U.S.C. § 701 *et seq.*, prohibits federal employers from discriminating against employees disabilities. *See Stone v. City of Mount Vernon*, 118 F.3d 92, 96 (2d Cir.1997). Section 504(a) of the Act provides, in relevant part:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). In order to establish a *prima facie* violation of Section 504, a plaintiff must establish that: (1) he is an "individual with a disability" under the Act; (2) he is "otherwise qualified" to participate in the program; (3) he is excluded from benefits solely because of his disability; and (4) the program or special service receives federal funding. *See Searles v. Board of Educ. of the Ellenville Cent. Sch. Dist.*, Nos. 96–CV–0637, 97–CV–0572,1999 WL 34983, at *4 (N.D.N.Y. Jan.13, 1999) (*citing Mrs. C v. Wheaton*, 916 F.2d 69, 74 (2d Cir.1990)). The second, third and fourth elements are not in question: defendants argue that plaintiff is not a disabled person under the Act.

For purposes of the Act, "individual with a disability" is defined as "any person who—(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B).[3] In order to determine if a person is a disabled individual under the Act, the court must use the standards applied under the Amer-

---

**3.** This definition is the same as the one used for purposes of the ADA. Under the ADA, "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

icans with Disabilities Act ("ADA") for similar employment discrimination complaints. *See* 29 U.S.C. § 794(d). These standards are regulations issued by the EEOC to carry out the employment provisions in Title I of the ADA.[4] *See* 42 U.S.C. § 12116. In the present case, plaintiff argues that he is a disabled individual as described by the first definition.

## A. "Physical or Mental Impairment"

There is no dispute that plaintiff's monocular vision is a physical impairment within the meaning of the Act. *See* 29 C.F.R. § 1630.2(h)(1) (defining "physical impairment" as "[a]ny physiological disorder, or condition ... affecting one or more of the following body systems: ... special sense organs").

## B. "Major Life Activities"

There is no dispute that working is one of plaintiff's major life activities within the meaning of the Act.[5] *See* 29 C.F.R. § 1603.2(i) (defining "major life activities" as "functions such as ... working").

## C. "Substantially Limits"

■ The determination of whether an impairment substantially limits a major life activity is an individualized analysis that must be made on a case-by-case basis. *See Albertsons, Inc.,* 119 S.Ct. at 2168 (*citing* 29 C.F.R. Pt. 1630, App., § 1630.2(j)). For purposes of the Act, "substantially limits" is defined as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). Factors to consider when determining whether an impairment substantially limits a major life activity include evidence of the nature and severity of the impairment, its duration and whether it will have a permanent or long-term impact. *See* 29 C.F.R. § 1630.2(j)(2).

When the major life activity at issue is working, the Act requires the use of a specialized definition of "substantially limits." The regulations require that an individual be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and ability." 29 C.F.R. § 1630.2(j)(3)(i). An inability to perform a single, particular job does not create a substantial limitation on an individual's major life activity of working. *Id.* Additional factors to consider when determining if an impairment substantially limits the major life activity of working include the geographical area to which the

---

**4.** The court recognizes that no federal agency, including the EEOC, has been given authority to issue regulations necessary to implement the generally applicable provisions of the ADA. These provisions, specifically the definition of "disability" at 42 U.S.C. § 12102(2), fall outside of Titles I § V. However, the EEOC has issued regulations to provide guidance for the interpretation of the term "disability." *See* 29 C.F.R. § 1630.2. Neither of the parties have contested the validity of the regulations, so they will be used for interpretive purposes.

**5.** Plaintiff suggests that the major life activity at issue is seeing and cites *Kirkingburg v.*

*Albertson's, Inc.,* 143 F.3d 1228 (9th Cir. 1998), to support his position that a monocular individual is disabled. The Supreme Court, however, recently overturned the Ninth Circuit's decision and held that "monocular individuals ..., must prove a disability by offering evidence that the extent of the limitation in terms of their own experience, as in loss of depth perception and visual field, is substantial." *Albertsons, Inc. v. Kirkingburg,* —— U.S. ——, 119 S.Ct. 2162, 2169, 144 L.Ed.2d 518 (1999). Plaintiff has not offered such evidence here, thus the court turns to the major life activity of working.

individual has reasonable access, and the class of jobs and broad range of jobs in various classes from which the individual has been disqualified. *See* 29 C.F.R. § 1630.2(3)(ii). The Supreme Court recently stated in *Sutton v. United Air Lines, Inc.,* — U.S. —, 119 S.Ct. 2139, 2153, 144 L.Ed.2d 450 (1999) that:

> [t]o be substantially limit· in the major life activity of working, ... one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

█ In the present case, plaintiff has failed to allege adequately that his monocular vision is an impairment that substantially limits his major life activity of working. Plaintiff argues that his working was substantially limited because he is prevented from continuing in his prior position as a TTO by defendants' regulations that do not allow him to drive a truck weighing over 10,000 pounds. *See* Pl. Letter Brief ¶ 3. This argument is not persuasive. While plaintiff is prevented from returning to work as a TTO, his working is not substantially limited as a result of this limitation. On July 28, 1997, moreover, plaintiff received a disability certificate from Dr. Jerry A. Shields that authorized his return to work without any restrictions. ·See Pl. Exhibit A. A month later, Dr. William Mailloux issued a medical assessment that although plaintiff did not meet DOT standards because of his monocular vision, he was still "medically qualified to perform any functions that do not require two eyes." Pl. Exhibit B. Plaintiff took and passed the Laborer and Custodial Examination, which qualified him to work in at least six different positions. Indeed, plaintiff accepted one of these positions and currently works as a laborer custodian.

The Supreme Court pointed out that in order to be substantially limited, an individual must be disqualified from "more than one type of job, a specialized job, or a particular job of choice." *Sutton,* 119 S.Ct. at 2153. Plaintiff has only demonstrated that he is precluded from working as a TTO. The limited scope of his disqualification does not rise to the level necessary for substantial limitation. Therefore, plaintiff has not established that he is an individual with a disability and has failed to show a *prima facie* violation of Section 504 of the Act.

### III. Claim of Retaliation in Violation of Title VII, 42 U.S.C. § 2000e *et seq.*

█ Plaintiff claims that defendants retaliated against him in violation of Title VII, 42 U.S.C. § 2000e *et seq.* by refusing to place him in the MVC. Title VII makes it unlawful "for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 29 U.S.C. § 2000e–3(a). Plaintiff must establish a *prima facie* case of retaliation by showing: (1) that the plaintiff. engaged in a protected employment activity known to the employer; (2) that the employer took an adverse employment action against the plaintiff; and (3) a causal connection between the plaintiff's protected activity and the adverse employment action. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995).

. Plaintiff's complaint filed with the EEOC satisfies the first element of his retaliation claim. In his Amended Complaint, plaintiff claims that defendants took an adverse employment action against him by "refus[ing] to place [him] in his craft." The court will not determine if this constitutes an adverse employment action because it will dismiss the claim on other grounds: the final requirement is to establish a causal relationship between the participation in the protected activity and the adverse employment action taken by de-

fendants, and plaintiff fails to do so. The underlying claim made to the EEOC was that defendants denied plaintiff's requests to be placed in the MVC in a light duty position. Plaintiff was unable to work in the MVC in any position other than light duty because of his impairment. Defendants' denial of plaintiff's request for light duty had the same effect as refusing to place plaintiff in the MVC. Plaintiff must establish a causal connection between the complaint filed with the EEOC and defendants' refusal to place him in the MVC, which is not possible because defendants' refusal was the basis for the EEOC complaint. Defendants's retaliatory action cannot take place before plaintiff engaged in a protected activity, so the retaliation claim must be dismissed.

IV. Claim of Hostile Work Environment in Violation of Title VII, 42 U.S.C. § 2000e *et seq.*

A district court only has jurisdiction to hear claims of discrimination that are either included in the EEOC complaint or are based on conduct subsequent to the EEOC complaint which is "reasonably related" to the challenged conduct. *See Butts v. City of New York Dep't of Housing Preservation and Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993). Claims that raise a wholly different type of discrimination than that raised in the EEOC complaint cannot be said to be "reasonably related" to the claims made in the underlying complaint. *See Kawatra v. Medgar Evers College of the City Univ. of New York*, 700 F.Supp. 648, 654 (E.D.N.Y.1988).

In the present case, plaintiff did not raise the hostile work environment claim in his EEOC complaint and it is not reasonably related to his claims of disability discrimination or retaliation. Additionally, plaintiff failed to address and provide specific facts to support his claim in his filings with this court. Therefore, the hostile work environment claim must be dismissed.

## CONCLUSION

Based upon the foregoing reasons, it is hereby **ORDERED,** that plaintiff's motion for summary judgment is **DENIED;** and it is further **ORDERED,** that defendants' cross-motion for summary judgment is **GRANTED.**

**IT IS SO ORDERED.**